Eddie Ray **PETERSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–91–00121–CR.

Court of Appeals of Texas, El Paso.

Aug. 5, 1992.

Discretionary Review Refused Nov. 25, 1992.

James Leitner, Houston, for appellant.

John B. Holmes, Dist. Atty. of Harris County, Houston, for appellee.

Before OSBORN, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

OSBORN, Chief Justice.

This is an appeal from a conviction of aggravated assault on a peace officer. The jury found the enhancement allegations true and sentenced Eddie Ray Peterson, Appellant, to thirty years' confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant seeks review of his conviction of assault on a police officer in eight points of error. We reverse the judgment of the trial court.

On July 21, 1990 at about 3 p.m., Houston police officers J.T. Howard and J.A. Montgomery observed Appellant driving a vehicle without a rear license plate. The officers stopped the Appellant. As Officer Howard approached the vehicle, he noticed a license plate lying on the "back dash" of the vehicle. This license plate was subsequently found to belong to neither the Appellant nor the vehicle.

Appellant could not produce a driver's license, and a check run by computer was unable to verify that Appellant indeed had been issued a valid driver's license. Appellant was then arrested for traffic violations, but not handcuffed. At this time, Appellant was seated in the patrol car and was quiet and cooperative. Incident to the arrest, Officer Howard inventoried Appellant's vehicle and found a loaded pistol, ammunition and a baggie of marijuana.

At this time, Officers Scoggins and Bryson arrived at the scene. Officer Bryson asked Appellant to step out of the patrol car. Appellant had been calm until this point. However, when Officer Bryson told Appellant he was under arrest for possession of the pistol and the marijuana, Appellant tried to escape. A struggle ensued as Appellant shoved Officer Bryson away. The other officers then joined in the attempt to place Appellant under arrest. Appellant was kicking and throwing punches at the officers. Appellant hit Officer Bryson with his fist on the side of the head during the struggle. Appellant was then subdued and placed in the police car in handcuffs and leg restraints.

■ In his first point of error, Appellant asserts the trial court erred in admitting evidence of extraneous offenses into evidence. The complained evidence is testimony regarding what was discovered in the inventory search; the pistol, ammunition and marijuana. The pistol, ammunition and marijuana were also introduced into evidence as State's Exhibit Nos. 1 and 2. Appellant asserts the introduction of this testimony and the exhibits constitutes evidence of extraneous offenses.

■ An extraneous offense is admissible under Tex.R.Crim.Evid. 404(b), if it has "relevance *apart from* its tendency 'to prove the character of a person in order to show that he acted in conformity therewith.'" *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App.1991) (on motion for rehearing). Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R.Crim.Evid. 401; *Gilbert v. State*, 808 S.W.2d 467, 471 (Tex.Crim.App.1991). If the evidence is relevant for a proposition other than conforming character, the evidence should be admitted. *Montgomery*, 810 S.W.2d at 387–88.

■ The State asserts this evidence is relevant to show why Appellant committed the assault on the officers. In *Turner v. State*, 641 S.W.2d 383 (Tex.App.—El Paso 1982, pet. ref'd), this Court held a defendant charged with escaping from prison could have the reason for his incarceration, capital murder, admitted into evidence. The State also asserts the evidence is relevant to establish Appellant's motive for attempting to flee and assaulting the officers. Evidence of an extraneous offense which shows an accused's motive or intent is admissible. Tex.R.Crim.Evid. 404(b); *Montgomery*, 810 S.W.2d at 387; *Porter v. State*, 623 S.W.2d 374, 385 (Tex.Crim.App. 1981).

Appellant was calm until he was informed by the officers he was under arrest

for possession of the pistol and marijuana. At that time, he attempted to flee after shoving Officer Bryson. The struggle that ensued, where Officer Bryson was punched in the head, arose from Appellant's reaction to the discovery of the pistol and marijuana. This evidence also is relevant to defeat Appellant's assertion of self-defense. Thus, the relevancy of the pistol, ammunition and marijuana is established.

■ Appellant asserts the prejudicial effect of this evidence need be reviewed. In *Montgomery*, the Court of Criminal Appeals held that an objection on the grounds of extraneous offense does not suffice to obtain a ruling on unfair prejudice; a specific objection asking the trial court to balance the probativeness and prejudice of the objectionable evidence, as per Tex.R.Crim. Evid. 403, is required. *Montgomery*, 810 S.W.2d at 388. Appellant failed to object on this basis. However, *Montgomery* further directs courts of appeals to engage in the balancing under Rule 403 unless the State raised the fact that Appellant has waived the error on appeal. The State has not done so, thus, we must engage in the balancing under Rule 403.

In this case, the probative nature of the evidence is not substantially outweighed by its prejudicial effect. The evidence is not only relevant to help establish motive and intent, but it is also relevant to dispute Appellant's assertion of self-defense. Although the evidence clearly is prejudicial, the prejudicial effect cannot be said to substantially outweigh the probative value. Having found the evidence to be relevant and not excessively prejudicial, Point of Error No. One is overruled.

■ In Point of Error No. Two, Appellant argues threats which he purportedly made to the officers after they arrested him constitute an extraneous matter which was improperly admitted into evidence. Several officers testified that the Appellant threatened to kill the first white police officer he could find when he was out of jail.

The analysis prescribed under *Montgomery* will be employed as it was above.

The first inquiry is when the statement was made in relation to the alleged assault. The evidence is unclear on this point. After the Appellant was initially subdued and placed under arrest, he was placed in the back of a patrol car. After some period of time, the Appellant allegedly began to struggle. He allegedly broke the leg restraints and began to kick the door. The officers removed him from the back of the patrol car and resecured his legs. He was then taken to the police station for booking. Sometime later, he was sent to Ben Taub Hospital to have some injuries treated.

A review of the officers' testimony is in order. Officer Howard testified Appellant made these statements as he was being taken to the hospital about 30 minutes to an hour after the alleged assault.

Officer Bryson testified:

Q. Did you hear the defendant making any oral statements out at the scene?
A. Basically after the arrest he made several statements towards the officers.
Q. Did he make any threats?
A. Yes, he did.

. . . . .

Q. [Attorney for the State] Would you tell the jury what he said?
A. He said—after we had arrested him and he was in the back of the car, he stated he would kill the first white officer he saw after he got out of jail and also stated he could find out where our families live and, you know, he could do some damage to our family also.

Officer Scoggins testified:

Q. At the scene that afternoon was the defendant making any types of threats to yourself?
A. Yes, ma'am, he was.

. . . . .

Q. What was he saying to you?
A. Mr. Peterson said he was from the Third Ward and quote, unquote, 'We don't take any crap from the law down in the Third Ward, and I'm going to be back to kill a white officer.'

Mostly racial type statements. He was extremely mad.

Officer Bryson's testimony is that the statements were made after Appellant was arrested, but he does not specify how long after the alleged assault the statements were made. Officer Scoggins' testimony is even more vague as to the time the statements were made. The question posed by the State asked if threats had been made at the scene that afternoon. There was no testimony pointed out by the State to limit this statement to a particular time frame before, during or after the alleged assault. In any event, the testimony reflects the statement was made after the alleged assault took place and not in the course of the assault.

The State asserts the statement is relevant to show Appellant's intent and/or state of mind. We disagree. The statement was made up to one hour after the alleged assault. This was the only evidence the trial court had the first time the statement was admitted during Officer Howard's testimony. There is clearly no relevance to the statement other than as propensity evidence. Thus, we conclude the admission of the statement at that time constituted error. The testimony of the other officers asserting the statement was made after the arrest is not specific enough to determine at what point in time the statements were made to establish relevance.

■ An in-depth discussion of the prejudicial effect of the statement threatening to kill the first white police officer is not needed. The statement is prejudicial because (1) it is racial in nature, (2) it shows the Appellant's propensity for desiring to kill police officers in general; and (3) it shows Appellant's feelings of retribution and revenge toward police officers. Thus, even if there is some probative value to the

statement, its value is substantially outweighed by its prejudicial effect.

■ We cannot say that this evidence did not contribute to the conviction. *Gutierrez v. State*, 628 S.W.2d 57, 62 (Tex.Crim.App. 1980). Point of Error No. Two is sustained, and the trial court's judgment is reversed and remanded for new trial.

■ Although our disposition of Point of Error No. Two is dispositive of the appeal, we will address Point of Error No. Three to avoid repetition of the error upon a retrial. Here Appellant asserts that the trial court erred in failing to limit the definition of intentional and knowing to only the results of Appellant's conduct. This argument is based on Appellant's contention that assault on a peace officer is a result-oriented crime.[1]

In *Beggs v. State*, 597 S.W.2d 375 (Tex. Crim.App.1980), the Court discussed differences in the requisite intent between crimes the legislature has deemed to punish specified conduct and specified result. The Court held that by adding the phrase "engages in conduct that" causes injury to a child to Section 22.04 of the Penal Code, the legislature did not intend to make injury to a child a "specific conduct" crime. *Id.* at 377; *Alvarado v. State*, 704 S.W.2d 36, 38 (Tex.Crim.App.1986) (on motion for rehearing). *Alvarado* reaffirmed *Beggs* and held:

> [I]t is usually a simple matter to look at a penal proscription and determine whether the Legislature intended to punish 'specified conduct' as opposed to a 'specified result.'
>
> •   •   •   •   •
>
> [T]he injury to a child statute, like the homicide and other assaultive proscriptions, does not specify the 'nature of conduct.' Clearly then, the 'nature of conduct' in these offenses is inconse-

---

1. The charge read:
   A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
   A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

quential (so long as it includes a voluntary act) to commission of the crimes. What matters is that the conduct (whatever it may be) is done with the required culpability to effect the *result* the Legislature has specified.

In sum, we have found nothing in legislative history, the penal code as a whole and particularly Chapter 6, nor in the public policy behind proscribing assaultive offenses, which would indicate anything other than that *Beggs* was correctly decided....

*Alvarado,* 704 S.W.2d at 39.

Aggravated assault on a peace officer under Tex.Penal Code Ann. § 22.02 (Vernon Supp.1992) occurs when the accused has assaulted another person, as defined by Tex.Penal Code Ann. § 22.01 (Vernon 1989), after the accused has been informed or knows that the assaulted person is a peace officer, and the accused (1) threatens the peace officer with a deadly weapon; (2) threatens to cause bodily injury; or (3) causes bodily injury. Tex.Penal Code Ann. § 22.02. The first two categories are prohibitions of conduct in that they do not require a result. Appellant was indicted and tried for causing bodily injury to a police officer which is a result-oriented offense.

The facts in this case are almost identical to the facts in *Sneed v. State,* 803 S.W.2d 833 (Tex.App.—Dallas 1991, pet. ref'd). Here, as in that case, the wording of the indictment charged the defendant with aggravated assault on a peace officer under Tex.Penal Code Ann. § 22.02(a)(2)(A) (Vernon 1989). This is considered a "result" type crime as opposed to a "conduct" offense.

In its charge to the jury, in this case as in *Sneed,* the court defined "intentionally" and "knowingly" word for word in accordance with the definitions in Tex.Penal Code Ann. § 6.03 (Vernon 1974). The language of those definitions is applicable to both conduct and result offenses. However, in this case as in *Sneed,* the charge applies the law to the facts and limits the jury to a finding of guilty only if it concludes beyond a reasonable doubt that the defendant intentionally or knowingly caused bodily injury to the peace officer.

In *Sneed,* the Court concluded that not only was the inclusion of the full definitions of "intentionally" and "knowingly" error, but that under the facts of that case where the prosecutor made numerous references throughout the trial to conduct, apart from result, as constituting an offense, the defendant suffered egregious harm.

Nearly ten months later, the Court in *Fuller v. State,* 819 S.W.2d 254 (Tex. App.—Austin 1991, pet. ref'd) reached a different result in another assault case involving bodily injury. In that case, the Austin Court held that the definitions of "intentionally" and "knowingly" which included the "engage in the conduct" language were erroneous but concluded there was no harm where the application paragraph of the charge limited the definitions to a finding that the defendant intended the result or knew what the result would be, just as in the case now before us.

More recently, the Court in *Banks v. State,* 819 S.W.2d 676 (Tex.App.—San Antonio 1991, pet. ref'd) considered a complaint about a charge in a "result" type offense involving an injury to a child. Justice Onion writing for the Court noted that the application paragraph of the court's charge failed to limit the culpable mental state and in fact authorized a conviction based solely on a finding that the defendant intentionally or knowingly engaged in conduct which happened to cause bodily injury to a child. Such error was compounded by the argument of the prosecutor which indicated that the State did not have to prove that the defendant intended the result obtained. The Court found egregious harm under the standard of review required by *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984).

■ Following *Sneed* and *Banks,* we conclude that it was error to include within the definitions of "intentionally" and "knowingly" the language about the defendant's conduct, and those terms should have been defined and limited to conduct which caused a particular result, i.e., bodily

injury. Following *Fuller,* we conclude that no harm has been shown since the application instruction required the jury to find beyond a reasonable doubt that the defendant did "intentionally or knowingly cause bodily injury". Point of Error No. Three is overruled.

The judgment of the trial court is reversed and the case is remanded for a new trial.