IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00342-CR

 

Innis Johnson,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 278th District Court

Madison County, Texas

Trial Court No. 11,143

 



Opinion



 








            A jury convicted Innis Johnson of
aggravated assault of a public servant and, after he pleaded true to
enhancement allegations, assessed his punishment at fifty-five years’
imprisonment.  Johnson contends in two issues that: (1) the court erred by
denying his motion for instructed verdict because the evidence is legally
insufficient to prove he used or exhibited a deadly weapon during the
commission of the assault; and (2) the court abused its discretion by allowing
the State to impeach him with his prior conviction for aggravated assault of a
public servant because the probative value of this evidence is outweighed by
the danger of unfair prejudice.  We will affirm.

Legal Sufficiency

            Johnson contends in his first issue
that the court erred by denying his motion for instructed verdict because the
evidence is legally insufficient to prove he used or exhibited a deadly weapon
during the commission of the assault.

Standard of Review

            A challenge to the denial of a motion
for a directed or instructed verdict is a challenge to the legal sufficiency of
the evidence.  McDuff v. State, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997);
 Montgomery v. State, 198 S.W.3d 67, 84 (Tex. App.—Fort Worth 2006,
pet. ref’d); accord Canales v. State, 98 S.W.3d 690, 693 (Tex. Crim.
App. 2003).  In reviewing a claim of legal insufficiency, we view all of the
evidence in a light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential element beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Sells v. State, 121 S.W.3d
748, 753-54 (Tex. Crim. App. 2003); Witt v. State, 237 S.W.3d 394,
396-97 (Tex. App.—Waco 2007, pet. ref’d).

            We measure the sufficiency of the
evidence against the hypothetically correct jury charge for the case.  Hooper
v. State, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007); Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Among other things, the
hypothetically correct charge must accurately apply the “law” as “authorized by
the indictment.”  See Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim.
App. 2000) (citing Malik, 953 S.W.2d at 240); see also Lockwood v.
State, 237 S.W.3d 428, 431 (Tex. App.—Waco 2007, no pet.); Sartain v.
State, 228 S.W.3d 416, 421 (Tex. App.—Fort Worth 2007, pet. ref’d).  This means
that the charge must instruct the jury on the statutory element(s) alleged in
the indictment.  Curry, 30 S.W.3d at 404-05.

            In addition, the charge is limited by
the factual allegations of the indictment.  See id. at 404. But cf.
Gharbi v. State, 131 S.W.3d 481, 483 (Tex. Crim. App. 2003) (hypothetically
correct jury charge need not include factual allegation which “is not a
statutory element or ‘an integral part of an essential element of the
offense’”) (quoting Gollihar v. State, 46 S.W.3d 243, 254 (Tex. Crim.
App. 2001)).  Thus, because the indictment in Curry alleged that he had kidnapped
Jetterson Williams, the “hypothetically correct jury charge could not simply
quote the language of the statute” and instruct the jury to convict if it found
he had kidnapped “another person.”  See Curry, 30 S.W.3d at 404. 
Rather, the hypothetically correct charge for that case would instruct the jury
that the State must prove Curry had kidnapped Williams as alleged.  Id.

The Evidence

            At the time of the offense, Johnson
was incarcerated at TDCJ’s Ferguson Unit. The evidence reflects that Johnson
punched correctional officer Christina Genco in the jaw with his fist.  He then
drug her into the dayroom for that cell block and took her to a bench where he
held her with a piece of glass against her neck.  As other correctional
officers surrounded them, Genco was able to pry the glass away from her neck. 
One of the officers sprayed Johnson with “COP,” which is similar to mace or
pepper spray, and the others then took hold of Johnson and escorted Genco to
the prison infirmary.  The blow to Genco’s jaw caused a fracture of the
mandible near the cleft of her chin.

            Christopher Smith was the only TDCJ
employee who witnessed the assault outside the dayroom.  He saw Johnson punch
Genco in the jaw with a closed fist and then drag her into the dayroom.  He did
not see a piece of glass in Johnson’s hand when he hit Genco.  David Simmons
testified that, when he responded to the call for assistance, he saw Johnson on
the bench holding Genco in a head lock with a piece of glass to her throat.  Nicholas
Blazek similarly testified that he initially observed Johnson in the corner of
the dayroom with the piece of glass to Genco’s throat.

            When Frances McCormick responded, she
saw Johnson dragging Genco into the dayroom.  McCormick testified on direct
examination by the prosecutor that she saw Johnson dragging Genco backwards
into the dayroom and that he had his hands “[a]round her throat with the piece
of glass.”  On cross-examination, McCormick testified that she did not see a
piece of glass in Johnson’s hand as he drug Genco to the bench.  Rather, she
“just kn[ew] he had his hand or something around [Genco’s] neck.”  She did not
actually see the piece of glass in his hand until he was at the bench.

            David Burns testified that when he
arrived he likewise saw Johnson dragging Genco through the dayroom.  According
to Burns, Johnson had her “in a headlock with a piece of glass applied to the
side of her neck.”  When Burns ordered Johnson to let her go, Johnson replied
that he was “going to cut [her] neck.”  Johnson disregarded three orders to
stop as he drug her to the bench.

            Genco testified that she does not
remember being hit.  The last thing she recalls before the assault was telling
an inmate the time.  “Everything went black,” and when she came to, Johnson was
dragging her through the dayroom door with his arm tightly around her neck
which made it difficult to breath.  As she held Johnson’s arm and turned her
head trying to breath, he yelled at her to “stop grabbing” his arm.  She told
him she was just trying to breath.  Johnson then hit her in the jaw a second
time, and she blacked out again.  When she came to the second time, she was at
the bench at the back of the dayroom, and Johnson was holding the piece of
glass against her throat.  On cross-examination, she testified that this was
the first moment when she noticed that Johnson had a piece of glass.

            Besides the broken jaw, Genco suffered
minor cuts and abrasions to her neck and four fingers.  She had no cuts or
abrasions on the outside of her jaw or chin.

            After the State rested, Johnson moved
for an instructed verdict on the basis that the State presented no evidence
that he had used or exhibited the piece of glass during the commission of the
assault.  Johnson also asked the court to require the State to elect which
assault it intended to rely on for prosecution.  The court denied both
requests.

            Johnson testified in his own defense. 
He admitted that he hit Genco in the jaw with his fist and dragged her to a
bench in the dayroom, but he denied hitting her a second time.  He also denied
holding a piece of broken glass at any point during the incident.

 

 

Aggravated Assault with a Deadly Weapon

            The indictment alleges that Johnson
caused bodily injury to Genco “by striking [her] with a hand, and the defendant
did then and there use or exhibit a deadly weapon, to-wit: a piece of glass,
during the commission of said assault.”

            Johnson contends that the assault
alleged in the indictment was complete after he hit Genco in the chin and that
his use of the piece of glass in the dayroom did not happen “during the
commission of” the assault.  The State responds that “the assault was a series
of events, including the blow to the jaw and the verbal death threats and the
glass to the throat.”

            We construe the State’s position as an
assertion that assault is a “continuing offense.”  See Barnes v. State,
824 S.W.2d 560, 561-62 (Tex. Crim. App. 1991).  In determining whether theft is
a continuing offense for limitations purposes, the Court of Criminal Appeals
observed, “Generally, when each of the elements of a crime have [sic] occurred,
the crime is complete.”  Id. at 562.  Relying on a decision of the
United States Supreme Court, the Court recognized that only in “limited
circumstances” will an offense be construed as continuing in nature and held
that an offense should not be so construed “unless the explicit language of the
substantive criminal statute compels such a conclusion or the nature of the
crime is such that [the Legislature] must assuredly have intended that it be
treated as a continuing one.”  Id. (quoting Toussie v. United States,
397 U.S. 112, 115, 90 S. Ct. 858, 860, 25 L. Ed. 2d 156 (1970)).  Under this
test and for the reasons set forth below, we hold that aggravated assault is
not a “continuing offense.”

            Because the indictment alleges that
Johnson assaulted Genco by “striking [her] with a hand,” this is the “offense”
the State had to prove.  The deadly weapon allegation is consistent with
section 22.02(a)(2) of the Penal Code which proscribes the use or exhibition of
a deadly weapon “during the commission of the assault.”[1] 
See Tex. Pen. Code Ann. § 22.02(a)(2)
(Vernon Supp. 2008).  Under the plain language of the indictment and from the statute,[2]
the State thus had to prove that Johnson used or exhibited the piece of glass
“during the commission of the assault.”  See Curry, 30 S.W.3d at 404-05. 
The issue we must determine is how long did the commission of the assault last. 
Resolution of this issue depends in part on how the charged offense is defined.

            Criminal offenses generally involve
one of three “conduct elements.”  See McQueen v. State, 781 S.W.2d 600,
603 (Tex. Crim. App. 1989); Underwood v. State, 176 S.W.3d 635, 641-42
(Tex. App.—El Paso 2005, pet. ref’d); Barnes v. State, 56 S.W.3d 221,
234 (Tex. App.—Fort Worth 2001, pet. ref’d).  Those elements are: (1) the
nature of the conduct; (2) the result of the conduct; and (3) the circumstances
surrounding the conduct.  Id.  An offense may involve more than one of
these elements.  Id.

            The conduct elements are generally
examined in two contexts.  First, it is important to define the applicable
conduct element because this is the element of the offense to which the
appropriate culpable mental state applies.  Id.  For example, if bodily
injury is the alleged result of the defendant’s conduct, the State must prove
that the defendant intentionally, knowingly (or recklessly) caused that injury. 
See, e.g., Kelly v. State, 748 S.W.2d 236, 239 (Tex. Crim. App. 1988); Peterson
v. State, 836 S.W.2d 760, 765 (Tex. App.—El Paso 1992, pet. ref’d); Sneed
v. State, 803 S.W.2d 833, 835-36 (Tex. App.—Dallas 1991, pet. ref’d).

            The second context in which these
conduct elements are considered is to determine whether the offense is
“complete” for Double Jeopardy purposes.  Thus, it has been held that
aggravated assault is a result-oriented offense which is “complete with the
injury of a single individual.”  Phillips v. State, 787 S.W.2d 391, 395
(Tex. Crim. App. 1990); In re K.W.G., 953 S.W.2d 483, 486 (Tex. App.—Texarkana 1997, pet. denied).  This second context is more pertinent to our
inquiry.

            Aggravated assault has not always been
classified as a result-oriented offense.  Courts have, however, consistently
classified aggravated assault by causing serious bodily injury under section
22.02(a)(1) as a result-oriented offense.  Landrian v. State, No.
PD-1561-07, 2008 WL 4489254, at *1 (Tex. Crim. App. Oct. 8, 2008); Phillips,
787 S.W.2d at 395; Hall v. State, 145 S.W.3d 754, 758 (Tex.
App.—Texarkana 2004, no pet.); see also Peterson, 836 S.W.2d at 765
(former offense of aggravated assault on peace officer by causing bodily injury
is result-oriented); Sneed, 803 S.W.2d at 835 (same).

            Conversely, aggravated assault by use
of a deadly weapon under section 22.02(a)(2) has been classified as a
conduct-oriented offense.  Landrian, 2008 WL 4489254, at *8 (Price, J.,
concurring); Hall, 145 S.W.3d at 758 (citing Guzman v. State, 988
S.W.2d 884, 887 (Tex. App.—Corpus Christi 1999, no pet.)).  We do not wholly
agree with this characterization.  Rather, we hold that aggravated assault with
a deadly weapon under section 22.02(a)(2) is an offense which combines more
than one “conduct element” and that the primary focus of the offense
(result-of-conduct or nature-of-conduct) will vary depending on the nature of
the underlying assault.  Cf. Patrick v. State, 906 S.W.2d 481, 491 (Tex.
Crim. App. 1995) (“capital murder is a result of conduct offense which also
includes nature of circumstances and/or nature of conduct elements depending
upon the underlying conduct”).

            Thus, when assault by threat is
alleged, as in Hall and Guzman, the focus is on the nature of the
defendant’s conduct, rather than the result of his conduct.  See Hall,
145 S.W.3d at 758-59; Guzman, 988 S.W.2d at 887.  But when as here it is
alleged that the defendant caused bodily injury, the primary focus remains on
the result of the defendant’s conduct, even if he uses or exhibits a deadly
weapon during the commission of the assault.  See Landrian, 2008 WL 4489254,
at *1 (“The gravamen of this result-oriented offense is ‘causing bodily
injury.’”); cf. Patrick, 906 S.W.2d at 491.  Therefore, we hold that
aggravated assault by causing bodily injury, accompanied by the use or
exhibition of a deadly weapon, is a result-oriented offense which also includes
a nature-of-conduct element, namely, the defendant’s use or exhibition of the
deadly weapon.

            Because the focus of the offense
remains on the result and because the statute requires that a deadly weapon be
used or exhibited “during the commission of the assault,” the evidence must
show that the defendant used or exhibited the weapon at some point at or before
the offense is complete (i.e., at or before the time the complainant
sustains bodily injury).  See Phillips, 787 S.W.2d at 395; K.W.G.,
953 S.W.2d at 486; cf. Curry, 30 S.W.3d at 406 (because “[a]n abduction
is a continuous, ongoing event,” the jury could find that the defendant used or
threatened to use deadly force at any point during the course of the abduction). 
This interpretation finds support in at least two cases which have focused on
the “during the commission” language.

            In Johnson v. State, the Court
of Criminal Appeals reviewed a jury verdict to determine whether the jury’s
answers regarding Johnson’s use of a deadly weapon were fatally conflicting. 
777 S.W.2d 421, 421 (Tex. Crim. App. 1989).  There, the jury found Johnson
guilty of aggravated sexual assault while using or exhibiting a deadly weapon
“in the course of the same criminal episode.”  Id. at 422.  However, the
jury refused to find in response to a special issue that he used or exhibited a
deadly weapon “in the commission of the offense.”  Id.[3]

            According to the testimony, Johnson
accosted the complainant at gunpoint and ordered her into his taxi.  He drove
her to several locations before parking at an apartment complex where he
sexually assaulted her.  She did not see the gun during the sexual assault.  Id.  The Court of Criminal Appeals explained why the jury’s findings were not in
conflict.

            It is rational to find that the jury
differentiated as to the meaning and substance between these two submissions
simply because they had already determined that appellant had exhibited or used
a deadly weapon during the “criminal episode,” and was guilty of aggravated
sexual assault, and then immediately thereafter they were asked if the
appellant used or exhibited a deadly weapon during the “commission of the
offense.”

 

            It is readily apparent that a juror could
rationally interpret this to mean that a further disparate determination on the
deadly weapon issue was necessary.  It is reasonable to find that the jury
correctly determined the appellant had exhibited a deadly weapon during the
course of the criminal conduct in question, i.e. during the “criminal
episode,” but that he did not exhibit the deadly weapon during the actual
physical sexual attack itself, i.e. during the “commission of the
offense.”  Under this reasonable explanation, the jury’s verdict and their
answer to the special issue are not in conflict.

 

Id. at
423.

            And in Wade v. State, this
Court focused on the term “and” as used in section 22.02(a)(2) where the
statute declares that it is an offense to assault someone “and” use or exhibit
a deadly weapon “during the commission of the assault.”  Wade v. State,
951 S.W.2d 886, 889 (Tex. App.—Waco 1997, pet. ref’d) (citing Tex. Pen. Code Ann. § 22.02(a)(2)).  We
explained that the term “and” here means “as well as” or “at the same time.”  Id.  We observed that under this statute the deadly weapon “must be used [or
exhibited] at the same time as the assault.”  Id.

            The definitions of the terms “use” and
“exhibit” in this context are well established.

[T]he word “use” typically means that a deadly weapon
must be “utilized, employed, or applied in order to achieve its intended result
‘the commission of a felony offense or during immediate flight therefrom,’”
that “use” could mean “any employment of a deadly weapon, even simple
possession, if such possession facilitates the associated felony.” 

 

Coleman v. State, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004) (quoting Patterson v.
State, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)).  “The word ‘exhibit,’
however, requires a weapon to be ‘consciously shown, displayed, or presented to
be viewed.’”  Id.

            To summarize, the indictment alleges
that Johnson caused bodily injury to Genco by striking her with his hand and
that he used or exhibited a deadly weapon (a piece of glass) during the
commission of this assault.  Therefore, to obtain a conviction under this
indictment, the evidence must show that Johnson used or exhibited the piece of
glass “at the same time as” he struck Genco with his hand.  See Wade,
951 S.W.2d at 889; see also Johnson, 777 S.W.2d 423.

Application

            Viewed in the light most favorable to
the verdict, the record contains evidence that Johnson struck Genco with his
hand two times during the episode.  From Genco’s testimony, she “blacked out”
both times.  Thus, the record contains evidence of two separate assaults by
Johnson which resulted in bodily injury to Genco and which are consistent with
(and thus “authorized by”) the allegations of the indictment.  See Malik,
953 S.W.2d at 240; Lockwood, 237 S.W.3d at 431; Sartain, 228
S.W.3d at 421; see also Curry, 30 S.W.3d at 404.  But did Johnson use or
exhibit the piece of glass during the commission of either assault?

            Juries are permitted “to draw multiple
reasonable inferences as long as each inference is supported by the evidence
presented at trial.  However, juries are not permitted to come to conclusions
based on mere speculation or factually unsupported inferences or presumptions.” 
Hooper, 217 S.W.3d at 15.  Viewed in the light most favorable to the
verdict, the jurors could reasonably infer that Johnson already had the piece
of glass in his possession when he hit Genco in the jaw the first time. 
However, it would be mere speculation, unsupported by any direct or
circumstantial evidence, for a juror to conclude that Johnson used or exhibited
the piece of glass during the commission of this assault.

            By contrast, Burns testified that
Johnson had Genco “in a headlock with a piece of glass applied to the side of
her neck” as he dragged her through the dayroom.  McCormick similarly testified
that she saw Johnson dragging Genco through the dayroom with his hands
“[a]round her throat with the piece of glass.”  The fact that Genco does not
recall Johnson wielding a piece of glass at this juncture is not dispositive.  Cf.
Herring v. State, 202 S.W.3d 764, 766 (Tex. Crim. App. 2006) (evidence
legally sufficient to prove use of deadly weapon where defendant told victim he
had a knife and threatened to kill her, even though she never saw knife). 
Therefore, viewing the testimony in the light most favorable to the verdict,
the jurors could reasonably infer that Johnson was holding the glass against
Genco’s neck when he hit her the second time.

            For these reasons, we hold that the
evidence is legally sufficient to support the jury’s finding that Johnson used
or exhibited a deadly weapon during the commission of the assault. 
Accordingly, we overrule Johnson’s first issue.

Impeachment Evidence

            Johnson contends in his second issue
that the court abused its discretion by allowing the State to impeach him with
his 2002 conviction for aggravated assault of a public servant because the
probative value of this evidence is outweighed by the danger of unfair
prejudice.

            We review a court’s decision to admit
or exclude evidence under an abuse-of-discretion standard.  Oprean v. State,
201 S.W.3d 724, 726 (Tex. Crim. App. 2006). Evidence of a prior conviction is
admissible to impeach a witness’s testimony if the conviction is for a felony
or a crime involving moral turpitude and the court determines that the
probative value of this evidence outweighs its prejudicial effect.[4] 
Tex. R. Evid. 609(a).  The
familiar Theus factors are employed to conduct this balancing process.  Berry v. State, 179 S.W.3d 175, 180 (Tex. App.—Texarkana 2005, no pet.)
(citing Theus v. State, 845 S.W.2d 874 (Tex. Crim. App. 1992)); Moore
v. State, 143 S.W.3d 305, 312-13 (Tex. App.—Waco 2004, pet. ref’d) (same). 
Those factors include: (1) the impeachment value of the prior crime; (2) the
temporal proximity of the past crime relative to the charged offense, and the
witness’s subsequent history; (3) the similarity between the past crime and the
offense being prosecuted; (4) the importance of the defendant’s testimony; and
(5) the importance of the credibility issue.  Theus, 845 S.W.2d at 880; Berry, 179 S.W.3d at 180; Moore, 145 S.W.3d at 312-13.

            Here, because the prior conviction
involves violence rather than deception, the impeachment value of the
conviction is low, and thus the first factor does not favor the admissibility
of the evidence.  See Theus, 880 S.W.2d at 881; Berry, 179 S.W.3d
at 180; DeLeon v. State, 126 S.W.3d 210, 215 (Tex. App.—Houston [1st Dist.] 2003, pet. dism’d, untimely filed).  Johnson concedes that the temporal
proximity of the prior offense favors its admission.  See Theus, 880
S.W.2d at 881; Berry, 179 S.W.3d at 180.

            Regarding the similarity of the prior
offense, the State states that “it is impossible to say exactly how similar the
offenses are” because “no details of the prior offense were given.”  However,
Johnson testified under cross-examination that the prior offense was an assault
on a prison guard.  Thus, because of the similarity of the offenses, this
factors weighs against the admissibility of the prior offense.  See Berry, 179 S.W.3d at 180; DeLeon, 126 S.W.3d at 215.

            We agree with the State, however, that
the final two factors favor the admissibility of the evidence.  The only
disputed issue at trial was whether Johnson used or exhibited a piece of glass
as a deadly weapon during the commission of the assault.  Virtually all of the
State’s witnesses testified that he did.  Johnson testified that he did not. 
The complainant Genco did not recall Johnson using or exhibiting the piece of
glass either time he struck her with his hand.  The physical evidence does not
support the State’s theory that he used or exhibited a piece of glass “during
the commission” of either assault.  Therefore, Johnson’s testimony and his
credibility were important because his defensive theory pitted his testimony
and the physical evidence which tended to support his testimony against the
testimony of the State’s witnesses.  See Theus, 845 S.W.2d at 881; Berry, 179 S.W.3d at 180.

            Accordingly, we cannot say that the
court abused its discretion by allowing the State to impeach Johnson with this
prior conviction.  Thus, we overrule Johnson’s second issue.

We affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurring with note)*

Affirmed

Opinion delivered and
filed October 22, 2008

Publish

[CRPM]

 

*           (“Chief
Justice Gray concurs in the judgment which affirms Johnson’s conviction.  He
joins no part of the opinion of the Court.  A separate opinion will not issue. 
He notes, however, the efforts to dissect the event into discrete parts is
unnecessary and will be an issue we will undoubtedly have to revisit.”)

 

            

 









[1]
              According to our research,
statutes governing the use or exhibition of a deadly weapon may be divided in
three categories: (1) those which, like section 22.02(a)(2), proscribe the use
or exhibition of a deadly weapon “during the commission” of the offense; see
Tex. Pen. Code Ann. § 20.04(b)
(Vernon 2003), § 22.02(a)(2) (Vernon Supp. 2008), § 30.05(d)(2) (Vernon Supp. 2008); (2) those which proscribe the use
or exhibition of a deadly weapon “in the course of the same criminal episode”; 
id. § 22.021(a)(2)(A)(iv) (Vernon Supp. 2008); and (3) those which
proscribe the use or exhibition of a deadly weapon “during the commission of the
offense or during immediate flight following the commission of the offense.”  Id. § 12.35(c)(1) (Vernon Supp. 2008); see also Tex. Code Crim. Proc. Ann. art. 17.291(b)(2)(B) (Vernon
2005), art. 42.12,  § 3g(a)(2) (Vernon Supp. 2008).

 





[2]
              In construing a statute, we
must apply the plain meaning of the statute unless it is ambiguous or the
interpretation would lead to absurd results.  Williams v. State, 253
S.W.3d 673, 677 (Tex. Crim. App. 2008).

 





[3]
              According to the lower court’s
opinion, this special issue was submitted under article 42.12, § 3g of the Code
of Criminal Procedure to determine Johnson’s parole eligibility.  See
Johnson v. State, 738 S.W.2d 307, 308 (Tex. App.—Houston [14th Dist.]
1987), rev’d, 777 S.W.2d 421 (Tex. Crim. App. 1989).





[4]
              If more than ten years have
elapsed since the date of the conviction or of the witness’s release from
confinement for that conviction, whichever is later, then the conviction is
admissible only if the court determines that the probative value of the
conviction “substantially outweighs its prejudicial effect.”  Tex. R. Evid. 609(b) (emphasis added).