Joseph Jamal **PHILLIPS**, Appellant

v.

The **STATE** of Texas, Appellee

NO. 01-16-00653-CR

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued July 27, 2017

646

Crespin Michael Linton, 440 Louisiana, Suite 900, Houston, TX 77002, for Appellant.

Kim Ogg, District Attorney, Kimberly Aperauch Stelter, Assistant District Attorney, Harris County, Texas, 1201 Franklin, Suite 600, Houston, TX 77002, for Appellee.

Panel consists of Chief Justice Radack and Justices Keyes and Massengale.

## OPINION

Evelyn V. Keyes, Justice

A jury convicted appellant, Joseph Jamal Phillips, of the third-degree felony offense of evading arrest with a motor vehicle and, after appellant pleaded true to the allegations in two enhancement paragraphs, assessed his punishment at fifty years' confinement.[1] In three issues, appellant contends that (1) the State failed to present sufficient evidence that he was driving the vehicle that evaded law enforcement; (2) the trial court erroneously

---

1. *See* TEX. PENAL CODE ANN. § 38.04(b)(2) (West · 2016).

admitted evidence that a bag of marijuana was found during the inventory search of the vehicle; and (3) the trial court erroneously admitted expert testimony about appellant's gang membership.

We affirm.

## Background

Humble Police Department Officer D. Meyers was on patrol during the early morning hours of November 10, 2014, when he received a call concerning a suspicious vehicle near the loading dock of the J.C. Penney department store at Deerbrook Mall around 5:30 a.m. Officer Meyers saw a vehicle fitting the description that he had been given leaving the mall parking lot, and he turned around to follow it. Officer Meyers was able to see into the vehicle. At first, it appeared to him that the only occupant was the driver, but he later learned that there was also a passenger sitting in the front passenger seat. It was still dark outside at the time Officer Meyers encountered this vehicle.

Officer Meyers witnessed the driver make several traffic violations, and he turned on his emergency lights to conduct a traffic stop. The driver slowed down and eventually turned into the parking lot of a nearby bank. The driver stopped in the bank parking lot, but Officer Meyers could tell that the driver did not place the vehicle in park but instead kept his foot on the brake. Officer Meyers also saw the driver and the passenger make furtive gestures, and he decided to call for backup because he did not think the men would comply with commands.

When another officer arrived at the bank, Officer Meyers commanded the men over his patrol car's PA system to put their hands on the ceiling of the car, and he also commanded the driver to turn off the vehicle. Officer Meyers stood outside next to the driver's door of his patrol car

while he gave these commands, and he testified that he was standing roughly level with where his dash-camera was located in his patrol car. The trial court admitted a recording from the dashcam into evidence. Officer Meyers acknowledged that the dashcam did not produce a high-quality recording, but he also stated that his view of the passengers of the suspicious vehicle was better than that seen on the recording. Officer Meyers had the patrol car's emergency lights and its spotlight shining on the vehicle, and he could see the driver through the driver's rearview and side mirrors. Officer Meyers identified appellant in court as the person driving the vehicle in the bank parking lot.

Appellant did not comply with Officer Meyers's commands, and his vehicle started rolling forward. Officer Meyers got back into his patrol car and started to follow the vehicle through the parking lot. Once the cars got out of the parking lot and onto the road, Officer Meyers turned on both the patrol car's emergency lights and siren. Appellant drove onto the entrance ramp to the northbound lanes of Highway 59, and Officer Meyers saw the passenger toss something out of the window and onto the ramp. Officer Meyers did not stop to see what the passenger had thrown out of the car, and this object was not recovered by police. Officer Meyers contacted other jurisdictions, including the Harris County Sheriff's Office and the Houston Police Department, for assistance in this pursuit. Appellant led Officer Meyers and several other patrol cars on a thirty-minute chase that traveled northbound on Highway 59, southbound on Highway 59, and through a parking lot, several major intersections, and several neighborhood streets before appellant crashed into another vehicle.

The crash turned appellant's car around so that it faced the wrong way on the

street, and the car came to a stop. Officer Meyers saw both the driver and the passenger get out of the car and start running. The driver, whom Officer Meyers again identified in court as appellant, ran through a nearby field and into a neighborhood, where he was caught by Houston Police Department Officer T. Rose, who had responded to Officer Meyers's call for assistance. Officer Rose arrived on the scene after the crash had already occurred, and he identified appellant in court as the person he had caught. Officer Meyers apprehended the passenger in a nearby ditch. On the dashcam video, which was admitted into evidence, Officer Meyers, after he apprehended the passenger, can be heard repeatedly asking if other officers caught the driver.

After the officers had appellant and the passenger in custody, they performed an inventory search of the vehicle appellant had been driving. The officers recovered an Airsoft replica pistol and a plastic bag that contained marijuana from the passenger compartment of the vehicle. Appellant objected to the admission of the evidence of the bag of marijuana, arguing that it was an improper extraneous offense and that the State offered it solely for its prejudicial effect, but the trial court overruled his objection, stating, "I think that it is connected as a possible explanation for evading so I think it is admissible."

The jury found appellant guilty of the offense of evading arrest. At the punishment phase, appellant pleaded true to the allegations in two enhancement paragraphs. The trial court also admitted evidence that appellant had five prior convictions.

The State then announced its intention to call Houston Police Department Sergeant C. Ponder to testify as an expert concerning appellant's gang membership and tattoos. Outside of the presence of the jury, Sergeant Ponder testified that he began working with gang members and conducting gang investigations in 2000 when he joined the Fondren Divisional Tactical Unit. He testified that he has been a part of several units with the Houston Police Department dedicated to conducting gang investigations. He stated that he is a member of the Texas Gang Investigators Association, that he attends regular conferences, and that he acquires most of his knowledge about gangs from talking with actual gang members. He has testified as an expert on gangs on many occasions.

Sergeant Ponder testified that he is familiar with the Bloods street gang as well as a local gang called "Dead End Alliance" affiliated with a particular neighborhood in Houston. He stated that his opinion that appellant was affiliated with gangs was based on appellant's numerous tattoos as well as the fact that appellant had been documented as a gang member in the Gang Tracker, the gang database of the Houston Police Department.[2] He stated that appellant had, on two occasions, self-admitted to an officer that he was a lieutenant in a subset of the Bloods. He further testified that, based on appellant's tattoos, appellant was a member of the Bloods, although he was not positive concerning the particular Houston-area subset of the Bloods with which appellant was affiliated.

Appellant objected to Sergeant Ponder's testimony, arguing that Ponder was not qualified to testify as an expert and that his opinion on appellant's gang affiliation was not reliable, that his opinion would not

---

**2.** Sergeant Ponder further testified that a person must meet two of eight specific criteria to be included in the Gang Tracker database and that the two criteria that appellant met were self-admission of gang membership and having gang-related tattoos.

be helpful to the jury, and that the prejudicial effect of his opinion outweighed its probative value. The trial court found that Sergeant Ponder was qualified to render an expert opinion on appellant's gang affiliation, and it ruled that Ponder's testimony was admissible.

Before the jury, Sergeant Ponder testified that there are about 200 documented gangs in the Houston area, with forty to fifty active gangs. He testified that he is familiar with the Bloods, a street gang based in Los Angeles that has ten or twelve subsets in the Houston area, their colors, and their major symbols. Sergeant Ponder stated that the Bloods are associated with "[a]ll types of criminal activity," including weapons offenses, narcotics offenses, assaults, thefts, robberies, and murders. He testified that he determined that appellant was a gang member and that he based this determination on viewing appellant's tattoos and on the fact that appellant self-admitted to being a gang member and is documented in the Gang Tracker database. The trial court admitted several photographs showing appellant's extensive tattoos covering most of his body, and Sergeant Ponder pointed out numerous tattoos displaying phrases and symbols connected with the Bloods and the Dead End Alliance.

The jury assessed appellant's punishment at fifty years' confinement. This appeal followed.

## Sufficiency of Evidence

In his first issue, appellant contends that the State failed to present sufficient evidence that he was the person driving the vehicle that evaded Officer Meyers. Specifically, appellant contends that the facts that the chase happened while it was dark outside, that Officer Meyers identified appellant as the driver solely through the car mirrors, and that the car spun after it crashed into another vehicle outweigh Officer Meyers's in-court identification of appellant as the driver.

### A. Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

### B. Evading Arrest With a Motor Vehicle

To establish that appellant committed the offense of evading arrest with a motor vehicle, the State was required to prove that appellant intentionally fled from Officer Meyers, a peace officer lawfully attempting to detain appellant, that appellant knew Officer Meyers was a peace

officer attempting to detain him, and that appellant used a motor vehicle while in flight. *See* Tex. Penal Code Ann. § 38.04(b)(2)(A) (West 2016); *Washington v. State,* 326 S.W.3d 302, 309–10 (Tex. App.—Fort Worth 2010, pet. ref'd). The only element that appellant challenges on appeal is identity, i.e., whether he was the individual driving the motor vehicle while in flight from Officer Meyers. The State is required to prove beyond a reasonable doubt that the accused is the person who committed the charged crime, and identity may be proved by direct or circumstantial evidence. *Roberson v. State,* 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd).

■ Appellant contends that the State's evidence did not establish beyond a reasonable doubt that he was the driver of the vehicle because it was dark outside during the chase, Officer Meyers viewed appellant solely through car mirrors and did not testify that he recognized appellant's facial features, and, when the car spun after the crash, "the occupants likely switched positions in the car." We disagree.

Officer Meyers testified that, although his encounter with appellant occurred around 5:30 a.m., when it was still dark outside, he could see into appellant's vehicle when he saw the vehicle leaving Deerbrook Mall and he could see that appellant was driving. He could also see into the vehicle after the vehicle stopped in the parking lot of a bank in response to Officer Meyers's turning on his emergency lights. Officer Meyers had the lights and the spotlight of his patrol car trained on the vehicle, and he witnessed both the driver and the passenger make "furtive gestures" after they pulled over into the parking lot. He acknowledged that his dashcam, which was located in a fixed position in his patrol car and produced a poor-quality video, could not view the driver's face, but Officer Meyers stood just outside of his driver's side door, and he could see the driver through the driver's rearview and side mirrors. *Cf. Madden v. State,* 242 S.W.3d 504, 516 (Tex. Crim. App. 2007) (noting poor quality of dashcam video and deferring to trial court's assessment of video, in which court found that video did not raise contested fact issue contradicting officer's testimony that defendant made nervous gestures). He identified the driver in court as appellant.

Officer Meyers further testified concerning his thirty-minute pursuit of the vehicle. He stated that the pursuit ended when the vehicle crashed into another car in an intersection. Officer Meyers did not see the crash itself as it occurred, but he arrived at the scene immediately after, as the vehicle turned towards oncoming traffic and came to a rest. He saw both the driver and the passenger climb out of the vehicle and flee on foot. Officer Meyers again testified that the person he saw climb out of the driver's side door was the same person he had seen behind the wheel of the vehicle in the bank parking lot, and he again identified the driver in court as appellant. Within a few minutes after the men fled the vehicle, officers had apprehended both the driver and the passenger. Officer Meyers caught the passenger and Officer Rose identified the person he caught as appellant. On the dashcam video, Officer Meyers was positive he had apprehended the passenger, and he repeatedly asked whether other officers had caught the driver.

The State thus presented evidence that, although it was dark outside at the time of Officer Meyers's encounter with appellant and the ensuing chase, Meyers had lights shining on the vehicle and was able to see into the vehicle and identify appellant as the driver of the vehicle, both in the bank parking lot, where Meyers stepped out of his patrol car to look into the vehicle, and at the scene of the crash. *See Fabela v.*

*State*, 431 S.W.3d 190, 194 (Tex. App.—Amarillo 2014, pet. dism'd) (holding evidence sufficient to establish identity of defendant as driver when all officers involved in chase identified driver as Hispanic male, one officer identified driver as sole occupant of vehicle, one officer identified driver as having very short hair, and defendant made several incriminating statements); *Castilla v. State*, 374 S.W.3d 537, 540 (Tex. App.—San Antonio 2012, pet. ref'd) (holding evidence sufficient to establish identity of defendant as driver of vehicle based in part on arresting officer's testimony that he "got a 'good look'" at driver when driver almost crashed into his patrol vehicle and there was circumstantial evidence that vehicle belonged to defendant's mother and defendant's documents were located in vehicle).

When viewing the evidence in the light most favorable to the verdict, as we must, we hold that the State presented sufficient evidence from which a rational jury could conclude beyond a reasonable doubt that appellant was the driver of the vehicle involved in evading law enforcement.

We overrule appellant's first issue.

### Admission of Extraneous Offense

In his second issue, appellant contends that the trial court erred in admitting evidence that officers found a bag of marijuana during the inventory search of his car. Appellant argues that this evidence was improper character evidence under Rule of Evidence 404(b) and that the prejudicial effect of the evidence outweighed its probative value in violation of Rule 403.

### A. *Standard of Review and Applicable Law*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010); *Wilson v.* *State*, 473 S.W.3d 889, 899 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). We will not reverse unless the record shows a clear abuse of discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). A trial court abuses its discretion only when the court's decision was so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *Id.*; *Wilson*, 473 S.W.3d at 899–900. We will not disturb the trial court's ruling if it can be justified on any theory of law applicable to the ruling. *Wilson*, 473 S.W.3d at 900.

Rule 404(b) prohibits the introduction of extraneous offense evidence to prove a person's character or to prove that on a particular occasion the person acted in conformity with that character. Tex. R. Evid. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011); *Wilson*, 473 S.W.3d at 900. Extraneous offense evidence may, however, be admissible if it has relevance apart from character conformity. *Devoe*, 354 S.W.3d at 469. Extraneous offense evidence may be admissible for other purposes, including motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Tex. R. Evid. 404(b)(2); *Devoe*, 354 S.W.3d at 469. Whether an extraneous offense has relevance apart from character conformity is a question for the trial court, and the court's determination is entitled to deference. *Devoe*, 354 S.W.3d at 469 (quoting *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)); *Ransom v. State*, 920 S.W.2d 288, 300 (Tex. Crim. App. 1994). A trial court's ruling admitting extraneous offense evidence generally falls within the zone of reasonable disagreement "if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue." *Devoe*, 354 S.W.3d at 469 (citing *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)).

 Additionally, the trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or the needless presentation of cumulative evidence. TEX. R. EVID. 403. When conducting a Rule 403 analysis, the trial court must balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). Rule 403 "envisions exclusion of evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). A trial court's decision not to exclude evidence under Rule 403 is entitled to deference. *See Wilson*, 473 S.W.3d at 900 (quoting *Moses*, 105 S.W.3d at 627).

### B. Whether Evidence Violated Rule 404(b)

Appellant contends that the trial court violated Rule 404(b) when it admitted evidence of a bag of marijuana found during the inventory search of his car because the State introduced the evidence solely to establish his bad character and to demonstrate his conduct in conformity with that character. The State, however, points out that the trial court, in overruling appellant's objection to the evidence, stated that the marijuana is "connected as a possible explanation for evading [arrest,]" and thus it argues that the marijuana was admissible as evidence of appellant's motive for evading arrest. We agree with the State.

The Court of Criminal Appeals has held that, although the existence of a motive for the charged offense is not essential to secure a conviction, "the presence or absence of a motive for a crime is obviously a factor that is related to the question of the defendant's guilt or innocence," and therefore proof of motive is generally admissible. *See Knox v. State*, 934 S.W.2d 678, 682 n.10 (Tex. Crim. App. 1996); *Sandoval v. State*, 409 S.W.3d 259, 298 (Tex. App.— Austin 2013, no pet.) ("Although proof of motive is not a required element in criminal cases, 'evidence of motive is one kind of evidence [that aids in] establishing proof of an alleged offense.'") (quoting *Crane v. State*, 786 S.W.2d 338, 349–50 (Tex. Crim. App. 1990)). Courts have also held that evidence of the extraneous offense of possession of marijuana is relevant to establish motive to flee police and is admissible.[3]

---

3. Appellant cites two cases for the proposition that the State offered the marijuana evidence as evidence of his bad character. Both cases are factually distinguishable. In *Peters v. State*, the Fourteenth Court of Appeals held that marijuana and a shotgun found during a search of the defendant's motel room after he was arrested was inadmissible under Rule 404(b) because the defendant "admitted to all elements of the crime charged," and therefore the extraneous evidence was not needed to demonstrate "motive, intent, preparation, plan or knowledge." 93 S.W.3d 347, 352–53 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). In *Garcia v. State*, the defendant was arrested for public intoxication, and during a search of his car officers discovered co-

See, e.g., *Peterson v. State*, 836 S.W.2d 760, 762–63 (Tex. App.—El Paso 1992, pet. ref'd) (holding that discovery of pistol, ammunition, and marijuana during inventory search of vehicle was admissible under Rule 404(b) and Rule 403 to establish defendant's motive for attempting to flee and assaulting police officers); *see also Powell v. State*, 189 S.W.3d 285, 288–89 (Tex. Crim. App. 2006) (holding that evidence of defendant's possession of handgun and parole status was relevant and admissible to establish motive to flee police in evading arrest case).

■ Here, the State presented evidence that, during the inventory search following appellant's arrest, officers discovered a bag of marijuana in the passenger compartment of the vehicle appellant had been driving. The trial court, in allowing Officer Meyers to testify regarding this discovery, stated that the marijuana was relevant and admissible because it provided a "possible explanation for evading [arrest]." We agree that the evidence of marijuana found in the vehicle driven by appellant was relevant to establish appellant's motive for evading arrest. *See Peterson*, 836 S.W.2d at 762–63. Because there is evidence that the State offered, and the trial court admitted, this extraneous offense for a purpose other than character-conformity, we hold that the trial court did not violate Rule 404(b) in allowing the marijuana evidence. *Devoe*, 354 S.W.3d at 469; *see also* Tex. R. Evid. 404(b)(2) (providing that evidence of extraneous offense is admissible

caine and marijuana before discovering two further bags of marijuana located in the defendant's shoe and sock. 871 S.W.2d 769, 770 (Tex. App.—Corpus Christi 1994, pet. ref'd). The Corpus Christi court held that the evidence of marijuana in the defendant's shoe and sock was inadmissible because it "was not relevant to prove knowledge or opportunity" in the defendant's

for purpose other than character conformity, including to establish motive).

## C. Whether Evidence Violated Rule 403

■ Appellant further argues that the admission of the marijuana evidence caused prejudice by "suggesting that if Appellant possessed the bad character to have an illegal drug that he must also have been the driver of the vehicle which fled from the police."

Here, because appellant's primary defense at trial was that the State did not prove that he was the driver of the car that evaded law enforcement and the evidence of appellant's identity as the driver was not overwhelming, the State had need of the marijuana evidence to establish a motive for evading arrest. *See Powell*, 189 S.W.3d at 289 (noting that State had need of evidence of handgun found in vehicle because "while the State had other evidence of identity, that evidence was contested and not overwhelming"). Furthermore, the State spent relatively little time addressing the discovery of marijuana in the vehicle, Officer Meyers's testimony concerning the marijuana was not confusing, and this evidence was not cumulative of any other evidence presented at trial. *See Gigliobianco*, 210 S.W.3d at 641–42 (listing factors for courts to balance in Rule 403 analysis).

Thus, although evidence of the discovery of marijuana, a controlled substance, in the vehicle that appellant was driving was prejudicial, we cannot conclude that it was *unfairly* prejudicial. *See Martinez v. State*,

case for the charged offense of possession of cocaine. *Id.* at 772. Unlike this case, *Garcia* did not involve a defendant fleeing from police officers after an attempted traffic stop, for which evidence of possession of a controlled substance in the vehicle would be admissible as evidence of a motive to flee.

327 S.W.3d 727, 737 (Tex. Crim. App. 2010) (noting that Rule 403 does not require courts to exclude evidence "simply because it creates prejudice"; instead, "the prejudice must be 'unfair' " to warrant exclusion under Rule 403). We conclude that the probative value of the marijuana was not substantially outweighed by its prejudicial effect. *See* Tex. R. Evid. 403. We therefore hold that the trial court did not err by admitting the extraneous offense evidence that marijuana was found in the car appellant had been driving.

We overrule appellant's second issue.

### Expert Testimony Concerning Gang Membership

Finally, in his third issue, appellant contends that the trial court erroneously admitted Sergeant Ponder's testimony concerning appellant's gang membership because Ponder was not qualified to render an expert opinion, Ponder's opinion testimony was not reliable, and Ponder's opinion testimony was not relevant.

### A. Standard of Review

Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if the expert's scientific, technical, or specialized knowledge will help the fact finder to understand the evidence or to determine a fact in issue. Tex. R. Evid. 702. We review the trial court's decision to admit expert testimony for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010).

■ Before the trial court admits expert testimony under Rule 702, it must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one

for expert testimony; and (3) admitting the expert testimony will actually assist the fact finder in deciding the case. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010). Courts commonly refer to these conditions as (1) qualification, (2) reliability, and (3) relevance. *Id.* (citing *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006)).

### B. Admissibility of Sergeant Ponder's Expert Testimony

#### 1. Sergeant Ponder's Qualifications to Render an Expert Opinion

Appellant first argues that Sergeant Ponder was not qualified to render an expert opinion on appellant's gang membership.

■ The question of whether the witness is qualified to testify as an expert is a two-part inquiry. *Id.* A witness must first have a sufficient background in the particular field, and the trial court must then determine whether that background "goes to the matter on which the witness is to give an opinion." *Id.* The proponent of the expert testimony must establish that the witness has knowledge, skill, experience, training, or education regarding the specific issue, and "[t]he focus is on the fit between the subject matter at issue and the expert's familiarity with it." *Id.* Courts should consider whether the field of expertise is complex because the degree of education, training, or experience a witness should have before qualifying as an expert is directly related to the complexity of the field about which the expert proposes to testify. *Rodgers v. State*, 205 S.W.3d 525, 528 (Tex. Crim. App. 2006). "If the expert evidence is close to the jury's common understanding, the witness's qualifications are less important than when the evidence is well outside the jury's own experience." *Id.* "Because the spectrum of education,

skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses appropriate qualifications as an expert on a specific topic in a particular case." *Davis*, 329 S.W.3d at 813; *Rodgers*, 205 S.W.3d at 527–28.

In this case, Sergeant Ponder testified outside the presence of the jury concerning his background with criminal street gangs. Sergeant Ponder testified that he began working with gangs, gang members, and gang investigations in 2000 when he joined the Fondren Divisional Tactical Unit. He has worked with a couple of different gang-related divisions within the Houston Police Department, including the Investigative First Responders Division, in which Sergeant Ponder supervised officers performing gang investigations, and the newly-created Gang Division. He testified that he is a member of the Texas Gang Investigators Association and that he attends trainings on a yearly and quarterly basis. He also stated that a good portion of the training involved with working gang investigations comes from talking with gang members while out on the streets, and he stated that he acquired most of his knowledge about gangs by letting gang members train and teach him. Sergeant Ponder testified that he is familiar with the Bloods and with the Dead End Alliance, and he also stated that he has testified as an expert on gang membership on many occasions.

Appellant argues that, nevertheless, Sergeant Ponder was not sufficiently qualified to testify as an expert because, as a member of the Fondren Divisional Gang Unit, Ponder worked on the southwest side of Houston and did not work on the north side of Houston or in Humble, where this offense occurred. However, Sergeant Ponder also testified, outside the presence of the jury, concerning the general structure of the Bloods as a national street gang with over two hundred subsets across the country. He testified that there are several subsets of the Bloods located in Houston and that most of the members of the Bloods he has encountered were members of one of three particular subsets. He also testified concerning the Dead End Alliance, which is included in the Houston Police Department's Gang Tracker as a gang, but Sergeant Ponder testified that he considers it more of a neighborhood as opposed to a gang, although he acknowledged that many other officers consider it a gang.

Sergeant Ponder thus displayed familiarity with both the Bloods and the Dead End Alliance. We conclude that the State established that Sergeant Ponder had sufficient knowledge, experience, and training concerning street gangs in Houston, including the Bloods and specific Houston-area subsets of the Bloods, such that he could render an expert opinion on this topic. *See Davis*, 329 S.W.3d at 813. We hold that the trial court did not abuse its "great discretion" in determining that Sergeant Ponder was qualified to provide expert opinion testimony on gang membership. *See id.*; *Rodgers*, 205 S.W.3d at 527–28.

**2. Reliability and Relevance of Sergeant Ponder's Expert Opinion Testimony**

Appellant contends that Sergeant Ponder's expert testimony that appellant is a member of a Houston-based subset of the Bloods is unreliable because the Bloods "have no office with documentation which shows a membership list, dues payments, or meetings which the Appellant has attended," the Bloods "have no documented organizational rules or bylaws which its members must follow," and evidence of tattoos and inclusion in the Gang Tracker were not reliable grounds on which to base

an expert opinion.[4] Appellant further argues that because Sergeant Ponder's testimony was not reliable, the State lacked sufficient proof that appellant was a member of the Bloods, and therefore testimony about the Bloods' criminal activity was not relevant.

▪ "[E]xpert testimony does not have to be based upon science at all; by its terms, Rule 702, by applying to 'technical or other specialized knowledge,' permits even nonscientific expert testimony." *Morris v. State*, 361 S.W.3d 649, 654 (Tex. Crim. App. 2011). The State may establish the reliability of this evidence by showing that: (1) the field of expertise involved is a legitimate one; (2) the subject matter of the expert's testimony is within the scope of that field; and (3) the expert's testimony properly relies upon or utilizes the principles involved in that field. *Davis*, 329 S.W.3d at 814–15. "The behavior of gangs and gang members is a generally accepted area of expert testimony which involves the gaining of specialized knowledge through experience or personal research." *Washington v. State*, 485 S.W.3d 633, 638 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see also Morris*, 361 S.W.3d at 656 (noting that behavior of gangs constitutes generally accepted area of expert testimony).

▪ In general, evidence of a defendant's gang membership is relevant and admissible during the punishment phase of a trial because the evidence relates to the defendant's character. *Beasley v. State*, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995); *Garcia v. State*, 239 S.W.3d 862, 866–67 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2016) (providing that during punishment phase, "evidence may be offered by the state ... as to any matter the court deems relevant to sentencing, including but not limited to ... [the defendant's] character....").

This Court has previously held that expert opinion testimony that a defendant's tattoos had distinctive meanings and were common in a particular gang supplied "sound evidence" of the defendant's gang membership. *Garcia*, 239 S.W.3d at 867. This Court has also held that "both self-admission and gang-related tattoos are factors regularly relied upon by law enforcement to identify gang members." *Washington*, 485 S.W.3d at 639.

▪ The trial court admitted photographs depicting appellant's extensive tattoos, tattoos which covered the majority of his body, and Sergeant Ponder testified concerning particular tattoos that, in his opinion, were connected specifically to the Bloods, Houston-based subsets of the Bloods, the Dead End Alliance, and general criminal activity. Sergeant Ponder identified numerous tattoos that referenced phrases or symbols connected to the Bloods. This testimony alone provides "sound evidence" of appellant's gang membership. *See Garcia*, 239 S.W.3d at 867. Furthermore, Sergeant Ponder testified

---

4. Appellant also argues that Sergeant Ponder's reliance upon appellant's inclusion in the Gang Tracker is misplaced because Ponder has no personal knowledge concerning appellant's alleged self-admissions of gang membership and Ponder did not testify concerning how the information about appellant included in the Gang Tracker was obtained. An expert is not required to have personal knowledge of the facts upon which he bases his expert opinion. *See* TEX. R. EVID. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.").

that the Gang Tracker reflected that appellant had twice self-admitted to being a gang member, including informing an officer that he was a lieutenant in a subset of the Bloods in 2012. As this Court has held, law enforcement officers routinely rely upon tattoos and self-admissions to identify gang members, and thus Sergeant Ponder properly relied upon and utilized the principles involved with the legitimate field of the behavior of gangs and gang members. *See Davis*, 329 S.W.3d at 813 (stating method by which State can establish reliability of non-scientific expert evidence); *Washington*, 485 S.W.3d at 639 (stating that self-admission and gang-related tattoos are regularly relied upon by law enforcement to identify gang members). Thus, the fact that Sergeant Ponder did not testify concerning documented membership lists or rules and bylaws of the Bloods did not render his expert opinion unreliable.

We conclude that Sergeant Ponder's expert testimony concerning appellant's membership in the Bloods was sufficiently reliable and relevant to a material issue in the punishment phase, specifically, appellant's character, and was therefore helpful to the jury in deciding the appropriate punishment. *See Davis*, 329 S.W.3d at 813. We therefore hold that the trial court did not err by admitting Sergeant Ponder's expert testimony concerning the Bloods and appellant's membership in a Houston-area subset of the Bloods.

We overrule appellant's third issue.

## Conclusion

We affirm the judgment of the trial court.