COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MANUEL GALLEGOS, | § | No. 08-23-00032-CR |
| Appellant, | § | Appeal from the |
| v. | § | 34th Judicial District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20190D00200) |

## MEMORANDUM OPINION

A jury found Appellant Manuel Gallegos guilty of one count of Engaging in Organized Criminal Activity and sentenced him to one year in the State Jail Division of TDCJ. In his sole issue on appeal, Gallegos contends the trial court erred in determining that a State witness was qualified to provide reliable expert witness testimony, and the admission of his testimony violated Rule 702 of the Texas Rules of Evidence. For the reasons set forth below, we affirm the trial court's judgment**.**

### FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case stem from a deadly confrontation in July 2017 between two motorcycle clubs, the Bandidos and the Kinfolk, [1] at the Mulligan's Chopped Hog Bar

---

[1] Throughout the opinion, we use Kinfolk, Kinfolk Club, and Kinfolk Motorcycle Club interchangeably.

(Mulligan's) in El Paso. The confrontation resulted in the death of the president of the El Paso Chapter of the Bandidos, Juan Martinez; serious injuries to two other Bandidos members, Ballardo Salcido and David Villalobos; and serious injuries to a member of a Bandidos "support" club, Juan Vega-Rivera.

According to the State's theory, Appellant, who was an admitted member of one of El Paso's two Kinfolk chapters and a former member of the Bandidos, initiated the confrontation as part of a plan to murder Martinez.[2] The State theorized that Appellant and Juan Mercado, another Kinfolk member, entered Mulligan's, which was known to be frequented by Bandidos members, with the intent of instigating a fight with the Bandidos to allow Javier Gonzalez, the vice president of the other Kinfolk chapter, to enter the bar and shoot Martinez while claiming he was acting in self-defense, defense of others, or both.

Much of the confrontation was captured on the bar's surveillance video. The video revealed that Appellant entered the bar first, followed by Mercado. At the time, Mercado was wearing a Kinfolk vest, while Appellant was wearing a t-shirt with Kinfolk "information" on it. Once inside the bar, Appellant spoke with Martinez, with whom Appellant had a long-time friendship, but after a short discussion not captured on the video (given its lack of audio), Appellant admittedly struck Martinez in the face. Several members of the Bandidos then attacked Appellant, knocking him to the floor. While Mercado was attempting to assist Gallegos, Gonzalez entered the bar followed by other Kinfolk members and began shooting, killing Martinez and seriously wounding Salcido, Villalobos, and Vega-Rivera.

Gonzalez was arrested and convicted of one count of Engaging in Organized Criminal Activity-Murder, with respect to Martinez's killing, and three counts of Engaging in Organized

---

[2] Witness testimony also identified Appellant as either the vice president or the president of his chapter of the Kinfolk at the time of the confrontation.

Criminal Activity-Aggravated Assault, with respect to the three other injured individuals. *See Gonzalez v. State*, No. 08-19-00062-CR, 2020 WL 7585890, at *1 (Tex. App.—El Paso Dec. 22, 2020, no pet.) (not designated for publication). We upheld Gonzalez's conviction against his claims that there was insufficient evidence to establish his intent, that the jury had no rational basis for rejecting his claims of self-defense and defense of others, and that he was denied the effective assistance of counsel. *Id.* at *10.

Appellant was similarly indicted for one count of engaging in organized criminal activity arising out of Martinez's murder (Count I), one count of engaging in organized criminal activity arising out of the assault of Martinez (Count II), and three other counts of engaging in organized criminal activity arising out of the aggravated assaults of Salcido (Count III), Villalobos (Count IV), and Vega-Rivera (Count V).[3] To establish Appellant was engaging in organized criminal activity, the State was required to establish that the Kinfolk Motorcycle Club was a "criminal street gang" and that Appellant was acting in furtherance of the gang at that time. *See* TEX. PENAL CODE ANN. § 71.02(a) (a person commits the offense of engaging in organized criminal activity if the "person commits an offense if, with the intent to establish, maintain, or participate . . . as a member of a criminal street gang, the person commits or conspires to commit" one of several enumerated offenses, including "aggravated assault" and "assault punishable as a Class A misdemeanor"); *see also Zuniga v. State*, 551 S.W.3d 729, 735–36 (Tex. Crim. App. 2018) (recognizing that the State has the burden of proving the defendant committed the underlying offense while acting "as a member of a criminal street gang" to establish a violation of Penal Code § 71.02). And in turn, a "criminal street gang" is statutorily defined as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the

---

[3] Mercado was indicted on similar charges to Gallegos but pled guilty to aggravated assault with respect to the shooting of Ballardo, and in exchange, the State dropped the other charges and placed him on deferred probation.

3

commission of criminal activities." TEX. PENAL CODE ANN. § 71.01(d).

At trial, Appellant did not deny he assaulted Martinez or deny he was a Kinfolk member at the time. Instead, he raised two primary defensive theories. First, he argued he was not acting in his capacity as a Kinfolk member at the time of the confrontation and was not acting in furtherance of any plot to kill Martinez. According to Appellant, he went to Mulligan's of his own accord after leaving another bar where he had been drinking with Mercado, Gonzalez, and other Kinfolk members, and Mercado was following him out of concern for Appellant's safety because he was drunk. As well, he acknowledged that Mercado called Gonzalez before entering the bar but claimed Mercado did so because he was concerned trouble might be inside the establishment after he observed the number of Bandidos motorcycles parked outside. Appellant admitted that a fight broke out after he and Mercado entered the bar and that he struck Martinez in the face, but he claimed it was simply an act of poor judgment, not part of a plan to murder Martinez.

Second, Appellant argued that—unlike the Bandidos—the Kinfolk Motorcycle Club was not a "criminal street gang" within the meaning of the Penal Code, and therefore, he could not be convicted of engaging in organized criminal activity. In support thereof, Appellant presented Gonzalez's prior testimony from his trial, in which Gonzalez, a former Bandidos member, testified the Kinfolk Club was not a "gang" that engaged in criminal activities and was instead a "brotherhood" of individuals who shared a common interest in riding motorcycles. In addition, State witness Adam Rios, who was also a former member of both the Bandidos and Kinfolk, testified that the Kinfolk Club was composed of individuals that "wanted just to ride and be a motorcycle club." Both Gonzalez and Rios also explained that the Kinfolk Club was created primarily by former members of the Bandidos as an alternative to the Bandidos, which they both described as a group of violent individuals who often provoked confrontations with Kinfolk

4

members, which in turn required them to carry weapons to protect themselves.

The State countered this point by proffering the testimony of Officer Francisco Balderrama, a gang unit investigator from the El Paso Police Department, to testify as an expert witness on the character of the Kinfolk Club. As discussed in more detail below, over Appellant's objection, Officer Balderrama was allowed to testify that the Kinfolk Club was a "criminal street gang" within the meaning of the Penal Code based on his knowledge of the organization and its members' past criminal conduct.

At the close of trial, the trial court instructed the jury on the necessary elements of all five alleged offenses and further instructed the jury on the lesser-included offense of assault with respect to Appellant striking Martinez in the face. The jury returned verdicts of not guilty on all counts, except for Count II, finding him guilty of engaging in organized criminal activity with respect to the assault of Martinez. Appellant was sentenced to one year in the Texas Department of Criminal Justice, State Felony Division. This appeal followed.

## ISSUE ON APPEAL

In his sole issue on appeal, Appellant contends the trial court violated Rule 702 of the Texas Rules of Evidence by admitting Officer Balderrama's expert testimony on the issue of whether the Kinfolk Motorcycle Club was a criminal street gang because his testimony was unreliable. We disagree.

## APPLICABLE LAW AND STANDARD OF REVIEW

Rule 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. As the Texas Court of Criminal

Appeals has recognized, under Rule 702, the following three requirements must be met before a witness may provide expert testimony on a particular subject: "(1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006) (citing *Alvarado v. State*, 912 S.W.2d 199, 215–216 (Tex. Crim. App. 1995) (en banc)); *see also Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). "These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance." *Vela v. State*, 209 S.W.3d at 131.

The party proffering an expert witness bears the burden of showing the witness is qualified as an expert on the specific subject matter in question. *See Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); *see also Jones v. State*, No. 08-01-00056-CR, 2002 WL 830861, at *2–4 (Tex. App.—El Paso May 2, 2002, pet. ref'd) (not designated for publication) (citing *Penry v. State*, 903 S.W.2d 715, 762 (Tex. Crim. App. 1995)). Determining whether a witness is qualified to testify as an expert witness involves a two-step inquiry. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010) (citing *Vela*, 209 S.W.3d at 131). First, the witness must "have a sufficient background in a particular field, but a trial judge must then determine whether that background goes to the very matter on which [the witness] is to give an opinion." *Vela*, 209 S.W.3d at 131 (internal quotation marks omitted). Second, the "proponent must establish that the expert has knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject" *Id.* at 132 (internal quotation marks omitted). The focus is therefore on the "fit" between the subject matter at issue and the expert's familiarity with it. *Id.* at 133. The specialized knowledge that qualifies a witness

6

to offer an expert opinion on a particular subject may be derived from a wide variety of sources, including "specialized education, practical experience, a study of technical works or a combination of these things." *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019) (citing *Wyatt*, 23 S.W.3d at 27); *see also Spitzer v. State*, No. 08-22-00059-CR, 2023 WL 2733363, at *4 (Tex. App.—El Paso Mar. 30, 2023, pet. denied) (mem. op., not designated for publication) (same); *Davis*, 329 S.W.3d at 813 (recognizing that a witness's qualifications may come from a wide "spectrum of education, skill, and training").

As the Texas Court of Criminal Appeals has recognized, "[b]ecause the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Rodgers*, 205 S.W.3d at 527–28; *see also Vela*, 209 S.W.3d at 131. We therefore review a trial court's ruling on the admissibility of expert testimony for an abuse of discretion. *See Rhomer*, 569 S.W.3d at 669; *see also Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). A trial court abuses its discretion when it acts without reference to any guiding rules and principles, or when it acts arbitrarily or unreasonably. *Rhomer*, 569 S.W.3d at 669 (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). Absent a clear showing of abuse of discretion, a trial court's decision to admit or exclude expert testimony will be upheld on review. *Wyatt*, 23 S.W.3d at 27; s*ee also Calderon v. State*, 950 S.W.2d 121, 128 (Tex. App.—El Paso 1997, no pet.). In determining whether a trial court abused its discretion in ruling on an expert's qualifications, an appellate court may consider three questions: "(1) Is the field of expertise complex? (2) How conclusive is the expert's opinion? (3) How central is the area of expertise to the resolution of the lawsuit?" *Rhomer*, 569 S.W.3d at 669–670 (citing *Rodgers*, 205 S.W.3d at 528); *see also Vela*, 209 S.W.3d at 131. In general, "[g]reater qualifications are required for more

complex fields of expertise and for more conclusive and dispositive opinions." *Rhomer*, 569 S.W.3d at 670. However, in areas in which the "expert evidence is close to the jury's common understanding, the witness's qualifications are less important than when the evidence is well outside the jury's own experience." *Rodgers*, 205 S.W.3d at 528.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ADMITTING OFFICER BALDERRAMA'S TESTIMONY

Of the three requirements that must be met before a witness may provide expert testimony, Appellant challenges Balderrama's testimony on two: his qualifications and the reliability of his testimony. We address each in turn.

### A. Officer Balderrama's testimony regarding his qualifications

At Appellant's January 2023 trial, Officer Balderrama submitted his "vitae" summarizing his qualifications and further testified regarding his professional background, his knowledge of gang subjects in general, and his knowledge of the Kinfolk Club in particular. At the time of trial, Officer Balderrama had been employed with the El Paso Police Department for over 20 years, had been assigned to the organized crime division in the Department's "gang unit" as a "gang investigator" for approximately 13 or 14 years, and had been concentrating primarily on "outlaw motorcycle gang cases" since 2020. He had also been a member of the Texas Gang Investigators Association since 2008, and at the time of trial, he was serving as the organization's director. He explained that the organization conducts a week-long conference every year and provides at least two trainings a year on motorcycle gangs, and that he has both received and given trainings on "outlaw motorcycle gangs." Officer Balderrama also testified that he is a member of the International Outlaw Motorcycle Gang Investigators Association, which centers on "outlaw motorcycle gangs." He testified that he had attended conferences with this group for the past four or five years, where he both received and gave trainings on various issues relating to outlaw

8

motorcycle gangs. Additionally, Officer Balderrama's vitae listed numerous gang-related cases in which he had either testified, consulted as an expert, or both, in state and federal court, which included testifying regarding the Kinfolk and Bandidos in Gonzalez's case.

Officer Balderrama explained he had acquired specialized knowledge of the Kinfolk Motorcycle Club from attending at least two conferences and trainings held by the above-described organizations at which the subject of the Kinfolk Motorcycle Club was covered, including information regarding how they started, their "colors," what they wear, and reports of criminal offenses they had committed. He recalled that a Kinfolk member had presented at one of the trainings and that he had interviewed at least one Kinfolk member who had been a former member of the Hell's Angels. In addition, Officer Balderrama explained that he had received information about the criminal activities of the Kinfolk Club from a nationwide network of law enforcement officers who, like himself, specialize in gang investigations and regularly report to each other on any gang activities in their areas. And he testified that this network includes an ATF analyst in Washington, D.C. who compiles information on gang activities throughout the country and sends email reports on specific gang activities to interested law enforcement officers.

According to Officer Balderrama, he learned through these various sources that the Kinfolk gang was started in 2016 or 2017 by former members of the Bandidos in the Dallas area and became active in El Paso around the same time. He further learned that the Kinfolk members almost immediately began committing criminal offenses, including aggravated assaults and shootings, not only in Texas, but in other jurisdictions as well, including Lubbock, Abilene, Fort Worth, Seattle, and Colorado. Officer Balderrama testified that he was familiar with Kinfolk Club attire, and specifically, with the 1% symbol on a Kinfolk vest patch taken from Gallegos's

9

home after the confrontation.[4] He explained that the 1% symbol, which other outlaw motorcycle gangs commonly use, stems from an American Motorcycle Association statement several years ago to the effect that 99% of all motorcycle clubs are law-abiding and only 1% can be considered "outlaw motorcycle gangs."

Finally, Officer Balderrama testified that he had personally investigated incidents involving the Kinfolk Club in El Paso, including one relating to a confrontation with Bandidos members and another in which Kinfolk members broke a window in a bar and pointed a gun at the patrons. He described arresting a Kinfolk member for engaging in organized criminal activity involving an assault on an individual who was not a member of a motorcycle gang for disrespecting the member while he was wearing Kinfolk attire, which he explained was considered acting in "furtherance of the gang." As well, he noted that he was personally involved in investigating the current offense and that he testified as an expert witness in Gonzalez's trial for his role in the shooting at Mulligan's.

Officer Balderrama provided his opinion that the Kinfolk Club was a criminal street gang within the meaning of the Penal Code.

## B. Appellant's challenge to Officer Balderrama's qualifications

While Appellant acknowledges that Officer Balderrama's background, training, and experience may have been sufficient to qualify him as a criminal-street-gang expert in general, he contends it was "grossly insufficient to establish him as an expert qualified to provide a reliable opinion as to whether the Kinfolk MC was a criminal street gang." According to Appellant, Officer Balderrama's knowledge of the allegedly criminal nature of the Kinfolk Club was based primarily on "anecdotal" reports from other gang unit investigators regarding the Kinfolk's alleged criminal

---

[4] At trial, Mercado testified that he understood the 1% patch to be representative of outlaw motorcycle gangs, meaning that they do not follow the law.

activities in their jurisdictions and from conference lectures discussing "anecdotal accounts and incomplete investigations that did not yield convictions for engaging in organized criminal activity." And he further contends that the trial court should not have qualified Officer Balderrama as an expert due to the "limited" number of conferences and trainings he had attended at which the Kinfolk Club was discussed and because he had only personally been involved in a handful of criminal investigations involving Kinfolk members, only one of which—Gonzalez's case—led to a conviction for engaging in organized criminal activities.

Appellant, however, cites no authority for the proposition that these were improper sources of information. As explained above, an expert witness may develop expertise or specialized knowledge from a variety of sources and a wide spectrum of education, skill, and training. *Rodgers*, 205 S.W.3d at 527–28; *Rhomer*, 569 S.W.3d 664, 669. Thus, expert witnesses are not required in every instance to demonstrate that they received formal training on a particular subject; instead, they may gain expertise in a particular field, including gang behavior, solely through their own personal experience or research. *See Morris*, 361 S.W.3d at 656 (recognizing that a witness may gain "specialized knowledge through experience or personal research [regarding] the behavior of gangs"); *Junell v. State*, 607 S.W.3d 410, 415 (Tex. App.—Texarkana 2020, pet. ref'd) (citing *Washington v. State*, 485 S.W.3d 633, 638 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (recognizing there is no requirement that expertise must come through formal training, and instead, an expert may demonstrate qualifications to testify on gang behavior "through experience or personal research")).

In addition, Texas courts have uniformly held that an individual may develop the necessary expertise and particular gang knowledge to qualify as an expert witness by attending trainings and conferences covering the subject gang, by communicating with other law enforcement officers

11

about the gang's activities, and by investigating and interviewing the gang's members. *See Hernandez v. State*, No. 01-06-00779-CR, 2013 WL 1804436, at *17–18 (Tex. App.—Houston [1st Dist.] Apr. 30, 2013, no pet.) (mem. op., not designated for publication) (per curiam) (officer was qualified to testify as an expert on the Mexican Mafia based on communications with other law enforcement officers who had investigated cases and crimes committed by the organization, attendance at trainings from various organizations (including the Texas Gang Intervention Association and the Texas Violent Gang Task Force) which covered the topic of the Mexican Mafia, and interviews with current and former members of the Mexican Mafia); *Cabrera v. State*, No. 10-12-00095-CR, 2014 WL 1882755, at *5 (Tex. App.—Waco May 8, 2014, pet. ref'd) (mem. op., not designated for publication) (officer was qualified to testify as an expert on the MS–13 gang based in part on trainings received and "interactions with other law enforcement officers who specialize in gangs" as well as multiple interviews with MS–13 members and victims of MS–13 gang violence); *Hernandez v. State*, No. 03-04-00356-CR, 2006 WL 191918, at *2–5 (Tex. App.—Austin Jan. 26, 2006, pet. ref'd) (mem. op., not designated for publication) (officers were qualified to testify as experts on the Mexican Mafia where they had received specialized training in gang identification and investigation, specifically including the Mexican Mafia, and had gained knowledge about the gang through other gang officers, informants, gang members, and "monitoring of websites"); *Phillips v. State*, 534 S.W.3d 644, 656 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (finding officer was qualified to testify regarding two Houston-area gangs based in part on attending trainings from the Texas Gang Investigators Association on a quarterly basis and speaking with subject gang members in the area during gang investigations).

Here, Officer Balderrama testified that he developed expertise through the exact same modalities, attending at least two trainings at which the topic of the Kinfolk Club was covered,

speaking with law enforcement officials in at least five other jurisdictions about the Kinfolk's alleged criminal activities in their areas, interviewing at least one Kinfolk member, and being involved in at least four investigations of the Kinfolk's criminal activities in El Paso, including the confrontation that led to the charges against Appellant and Gonzalez's conviction. Appellant nevertheless argues Officer Balderrama's training and knowledge of the Kinfolk Club was too limited to support a finding that he was qualified to serve as an expert witness on the subject of the Kinfolk's character, suggesting that it was necessary for him to attend more than two trainings and to be involved in more than one investigation that actually led to a conviction. Yet Appellant has cited no authority for the proposition that an expert must attend a certain number of trainings or be involved in a certain number of investigations to be qualified as an expert, nor are we aware of any such requirement.

Moreover, we note that Officer Balderrama's testimony regarding whether the Kinfolk Club could be considered a "criminal street gang" was not a particularly complex subject and was instead a subject "close to the jury's common understanding," thereby rendering his testimony of less importance than if the subject matter was more complex, or further "outside the jury's own experience." *See Rodgers*, 205 S.W.3d at 528 (recognizing that expert testimony is of less importance when the covered subject matter is not complex); *see also Harris v. State*, No. 2-01-348-CR, 2003 WL 2006578, at *3 (Tex. App.—Fort Worth May 1, 2003, pet. ref'd) (not designated for publication) (recognizing that the meaning of the term "criminal street gang" is a matter that could be "commonly understood" by a jury). As explained above, to find that the Kinfolk Club was a criminal street gang, the jury was only required to find that it had three or more members having either a "common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." TEX. PENAL CODE

13

ANN. § 71.01(d). And given the relatively simple nature of these requirements, Officer Balderrama's testimony did not require a high degree of expertise. We therefore conclude Officer Balderrama was sufficiently qualified to provide an expert opinion on the issue of whether the Kinfolk Motorcycle Club was a criminal street gang within the meaning of the Penal Code.

### C. Appellant's challenges to the reliability of Officer Balderrama's testimony

Next we address Appellant's challenge to the reliability of Officer Balderrama's testimony. Appellant contends Officer Balderrama was unreliable because he was unable to provide any "systematic, statistical, scientific, or academic assessment to support his opinion" that Kinfolk was a criminal street gang. Appellant does not, however, cite any authority for the proposition that such an "assessment" was necessary—or even possible—in the context of establishing the necessary elements of a criminal street gang.

Moreover, as the State points out, in "soft science" or "nonscientific" subject areas, such as a gang's characteristics, the Court of Criminal Appeals has held that a trial court should consider the following three issues in determining the admissibility of his testimony: "(1) whether the field of expertise is a legitimate one; (2) whether the subject matter of the expert's testimony is within the scope of that field; and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field." *Jones*, 2002 WL 830861 at *4 (citing *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999) (en banc)). Appellant, however, neither addressed these requirements nor explained why Officer Balderrama's testimony did not fit these requirements. And we agree with the State that Officer Balderrama's testimony did in fact satisfy all three requirements.

Finally, Appellant appears to be criticizing the reliability of Officer Balderrama's

14

testimony by contending that he was only aware of situations in which the Kinfolk members were involved in assaultive-type conduct, i.e., primarily "bar fights" with other gangs as opposed to "other criminal activity such as racketeering, prostitution, illegal weapon dealing, drug dealing, extortion, etc." Appellant, however, has cited no authority for the proposition that an organization may not be considered a "criminal street gang" where it has only engaged in assaultive-type conduct. To the contrary, as our sister court has recognized, evidence that a gang member engaged in a "pattern of assaultive behavior" is sufficient to support a finding that he was a member of a criminal street gang within the meaning of the Penal Code. *See Chaddock v. State*, 203 S.W.3d 916, 922 (Tex. App.—Dallas 2006, no pet.); *see also Trevino v. State*, No. 03-03-00155-CR, 2004 WL 34871, at *4 (Tex. App.—Austin Jan. 8, 2004, pet. ref'd) (mem. op., not designated for publication) (evidence linking members to three other assaults was sufficient to support a finding that organization had engaged in "a continuing course of criminal activities" under the Penal Code). Accordingly, we find Officer Balderrama's opinion on the question of whether the Kinfolk Club was a criminal street gang was sufficiently reliable to be admissible at trial.

Concluding the trial court did not abuse its discretion in finding Officer Balderrama qualified to testify as an expert witness on this subject, we overrule Appellant's sole issue.

## CONCLUSION

The trial court's judgment is affirmed.

LISA J. SOTO, Justice

August 23, 2023

Before Rodriguez, C.J., Palafox, J., Soto, J.

(Do Not Publish)

15