COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JONATAN PEREZ, | § | No. 08-19-00155-CR |
| Appellant, | § | Appeal from the |
| v. | § | 409th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20180D03845) |

## O P I N I O N

A jury convicted Appellant Jonatan Perez of aggravated assault against a public servant and of a separate charge of assault against a different public servant. The trial court assessed a punishment of ten years in prison on each charge, with the sentences running concurrently, but suspended imposition of the sentences and placed Appellant on community supervision for ten years. Appellant challenges his convictions in seven issues. We affirm.

### I.   BACKGROUND

#### A.   Factual Background

On July 8, 2018, El Paso Police Department Officers Eric Rinker and Victor Hernandez were on duty, assigned to patrol. Around midnight, the officers initiated a traffic stop after noticing a vehicle operating on the roadway without headlights or tail lights turned on. Officer Rinker exited

his patrol car and approached the driver, who was later identified as Appellant, and asked for identification. Appellant responded that he had no identification. Officer Rinker noted Appellant's right hand was shaking; he also detected a suspicious odor. He asked Appellant to step out of his vehicle and proceed to the front of the patrol car. As Appellant complied, Officer Rinker saw his left hand grabbing at his left pocket. Officer Rinker asked him whether he had weapons or illegal narcotics on his person, to which Appellant responded that he had a "key." Officer Rinker testified he understood a "key" to mean that Appellant had narcotics in his possession.[1]

Based on Appellant's lack of identification, his reaching for his pocket, and his apparent statement that he was in possession of narcotics, the officers decided to handcuff him while they conducted further investigation. As each officer took an arm to attempt to place Appellant's arms behind his back, Appellant broke free of their grip, turned his body, and took off running. Up to this point, the interaction with Appellant was captured on the patrol car's dash camera and played for the jury in open court. Appellant made it approximately twenty feet—and apparently out of view of the dash camera—before the officers caught up and brought him to the ground.

The evidence showed that an approximately two-minute struggle ensued between the three men—Appellant and both officers—until Appellant was finally placed under control after two other officers arrived. During the struggle, Appellant stood up two separate times, despite both officers' weight being placed on top of him. When they tackled him again, Appellant bit Officer Hernandez's right hand. Both officers ended up deploying their tasers during the altercation, but

---

[1] The record indicates that the term "key," as used in the context of a response to the question of whether an individual has any drugs or weapons in their possession, is a slang term for a "kilo" of some drug.

2

neither immobilized Appellant. At one point, Appellant removed the taser prongs from his own upper torso, then threw them at Officer Rinker, which caused an electrical current to run through Officer Rinker's body. The electric current immobilized his arm causing him to drop his taser, which Appellant then grabbed with both hands and tucked under his body. It was not until Officer Rinker placed Appellant in a choke hold that Appellant's strength began to wane. The struggle ended when other officers arrived on scene to assist. Both officers came away from the incident with a number of cuts and scrapes, and Officer Hernandez suffered a fractured hand and recessed knuckle.

**B. Procedural Background**

In connection with the foregoing incident, Appellant was indicted for aggravated assault against a public servant (Count I) based on the injuries sustained by Officer Hernandez. Appellant was also indicted for assault against a public servant (Count II) based on injuries sustained by Officer Rinker. Lastly, Appellant was indicted for attempting to take a weapon from an officer (Count III).

Appellant was tried by a jury on all three counts and found guilty of Counts I and II only. The jury acquitted Appellant of Count III. Sentencing was to the trial court and Appellant was sentenced to ten years in prison on Counts I and II, with each sentence running concurrently. The trial court suspended imposition of both sentences and placed Appellant on community supervision for ten years. Appellant filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## II. ISSUES PRESENTED

In Issue One, Appellant challenges the legal sufficiency of the evidence that the bite

3

referenced in Paragraph A of Count I caused Officer Hernandez to suffer serious bodily injury. In Issue Two, Appellant challenges the legal sufficiency of the evidence as to whether the State proved the element of causation under Paragraph B of Count I. In Issues Three and Four, Appellant objects to the jury charge submitted on Count I on two different grounds: that it violated Texas law (Issue Three) and that it deprived Appellant of Due Process under the Fourteenth Amendment to the United States Constitution (Issue Four). In Issue Five Appellant challenges the legal sufficiency of the evidence as to whether the State proved Appellant was acting with the necessary level of culpability under Paragraph B of Count I. In Issues Six and Seven, Appellant challenges the legal sufficiency of two elements of Count II: whether the State proved causation (Issue Six) and whether the State proved Appellant was acting with the necessary level of culpability (Issue Seven).

We address Appellant's legal sufficiency challenges first, then his jury-charge-related challenges.

### III. DISCUSSION

#### A. Legal Sufficiency of the Evidence

Five of Appellant's issues—One, Two, Five, Six, and Seven—raise challenges to the legal sufficiency of the evidence to support his convictions under Counts I and II.

#### 1. Standard of Review

In criminal cases, the legal sufficiency standard articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S.307, 319 (1979), is the appropriate standard for a reviewing court to apply in determining whether the evidence is sufficient to support a conviction. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) (finding no meaningful distinction between

4

the legal and factual sufficiency standards and no justification for retaining both standards) (citing *Jackson*, 443 U.S. at 319). Under that standard, a reviewing court must consider all evidence in the light most favorable to the verdict and in doing so must determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894-95 (citing *Jackson*, 443 U.S. at 319). In addition, we treat circumstantial evidence as being as probative as direct evidence and the standard of review is therefore the same for both circumstantial and direct evidence. *See Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). A lack of direct evidence is not dispositive on the issue of the defendant's guilt; circumstantial evidence on its own can establish guilt. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

In considering the evidence, we keep in mind that the trier of fact is the sole judge of the weight and credibility of the evidence, and we must presume that the fact finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Dobbs v. State*. 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Further, we are not permitted to reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). "[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Therefore, our task is to determine whether, based on the evidence and reasonable inferences drawn therefrom, a rational juror could have found the essential elements of the charged offenses beyond a reasonable doubt. *Id*.

5

## 2. Elements and Definitions

Count I of the indictment charged Appellant with committing aggravated assault against a public servant—specifically Officer Victor Hernandez—on July 8, 2018, in relation to the incident described above. The elements of aggravated assault against a public servant, as relevant to the facts of this case, are that a person: (1) intentionally, knowingly, or recklessly (2) causes (3) serious bodily injury to another and (4) the offense is committed against a person the actor knows is a public servant (5) while the public servant is lawfully discharging an official duty. TEX. PENAL CODE ANN. §§ 22.01, 22.02; *Peterson v. State*, 836 S.W.2d 760, 765 (Tex. App.—El Paso 1992, pet. ref'd).

A "serious bodily injury" is defined as a bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. TEX. PENAL CODE ANN. § 1.07(a)(46).

The element of causation is met when "the result would not have occurred but for [the actor's] conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE ANN. § 6.04(a).

A person acts intentionally when it is his conscious objective or desire to cause the result of his action. TEX. PENAL CODE ANN. § 6.03(a). A person acts knowingly when he is aware that his conduct is reasonably certain to cause the result. TEX. PENAL CODE ANN. § 6.03(b). A person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. TEX. PENAL CODE ANN. § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary

6

person would exercise under all the circumstances as viewed from the actor's standpoint. *Id*.

The elements of Count II, assault against a public servant, as relevant to the facts of this case, are that a person: (1) intentionally, knowingly, or recklessly (2) causes (3) bodily injury to another (4) and the offense is committed against a person the actor knows is a public servant (5) while the public servant is lawfully discharging an official duty. TEX. PENAL CODE ANN. § 22.01. The only difference between the elements of Count I and Count II is that Count II only requires a "bodily injury," as opposed to a "serious bodily injury." TEX. PENAL CODE ANN. § 22.01. "Bodily injury" means physical pain, illness, or any impairment of physical condition. TEX. PENAL CODE ANN. § 1.07(a)(8).

### a. Whether there was legally sufficient evidence that Officer Hernandez suffered a serious bodily injury and that Officer Rinker suffered a bodily injury

As stated above, "serious bodily injury" includes serious permanent disfigurement or a protracted loss or impairment of the function of any bodily member or organ. TEX. PENAL CODE ANN. § 1.07(a)(46). There is no standard list of injuries that constitute serious bodily injuries; the question whether a victim suffered a serious bodily injury is usually for the jury to decide. *Huerta v. State*, 933 S.W.2d 648, 649-50 (Tex. App.—San Antonio 1996, no pet.). Reviewing courts must determine whether evidence at trial was legally sufficient to permit the jury to conclude that an injury fell within the definition of a "serious bodily injury" on a case-by-case basis, evaluating each case on its own facts. *See Moore v. State*, 739 S.W.2d 347, 352 (Tex. Crim. App. 1987) (en banc).

Here, the jury heard evidence that Officer Hernandez fractured his hand, which caused him to be in a cast for two months. The jury heard evidence that Officer Hernandez's time in the cast

was longer than his discharge paperwork stated it would take for his fracture to heal. The jury also heard that Officer Hernandez now has a permanently recessed knuckle on his right hand. During the line of questioning regarding his recessed knuckle, the jury was given the opportunity to see the recessed knuckle. The jury also saw Officer Hernandez's medical records, which support his testimony about his injuries and indicate that Officer Hernandez's right hand is his dominant hand. We conclude that the evidence of Officer Hernandez's permanently recessed knuckle, combined with his occupation as a police officer and his right-hand dominance, was legally sufficient evidence that a rational juror could have determined constituted serious permanent disfigurement. And we further conclude the evidence of Officer Hernandez's fractured hand and two months in a cast is legally sufficient evidence that a rational juror could have determined constituted a protracted impairment of the function of a bodily member or organ. As a result, there is legally sufficient evidence of the element of "serious bodily injury" to Officer Hernandez. *See Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (trauma caused two broken arms, broken legs and multiple contusions and bruises which left permanent damage); *Tinker v. State,* 148 S.W.3d 666, 671 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (victim's shoulder injury met the definition of serious bodily injury where diagnosis showed there may be permanent deformity, and long-term pain and disability if it does not heal properly).

Although Appellant does not appear to challenge the jury's finding that Officer Rinker suffered a bodily injury, because it is an element of Count II, we will briefly discuss the evidence in support. "Bodily injury" means physical pain, illness, or any impairment of physical condition. TEX. PENAL CODE ANN. § 1.07(a)(8). At trial, the jury heard testimony from Officer Rinker that, as a result of this incident, he suffered abrasions to his left wrist, his left elbow, his left leg, and

8

his right knee. The jury also saw pictures of these injuries. The jury heard testimony from Officer

Rinker that he felt pain due to these injuries. We determine that there was sufficient evidence for

a rational juror to find beyond a reasonable doubt that this element of Count II was met.

### b. Whether there was legally sufficient evidence that the two officers' injuries were caused by Appellant

While it is true that criminal liability for assault offenses must be premised on an injury

caused by a voluntary act of the defendant, it is not a statutory requirement that the injury be caused

by any specific exertion of force by the defendant. *See* TEX. PENAL CODE ANN. § 22.01(a); *Morales

v. State*, 293 S.W.3d 901, 908 (Tex. App.—Texarkana 2009, pet. ref'd); *Rollins v. State*, No. 01-

14-00768-CR, 2016 WL 635218, at *5 (Tex. App.—Houston [1st Dist.] Feb. 11, 2016, no pet.)

(mem. op., not designated for publication) ("While the [ ] injuries may not be attributable to one

specific act, the jury could conclude that the injuries were the result of the overall physical struggle

resulting from [the defendant's] use of force."). Officer Hernandez readily conceded that he does

not know exactly when during the struggle with Appellant his hand was broken. Similarly, Officer

Rinker testified that he did not remember how he sustained his abrasions. But the operative ques-

tion as to the causation elements of these two offenses is *whether* Appellant caused the officers'

injuries, not whether he caused them in a specific way.

Here, the jury heard testimony and saw video evidence that Appellant broke free of both

officers' grasp in an attempt to escape and avoid being detained. The jury heard further evidence

of a significant struggle that ensued between Appellant and the two officers, which included tack-

ling, punching, biting, and ultimately the officers' use of both of their tasers, and that at some point

during the struggle, Officer Hernandez fractured his hand and both officers sustained scrapes, cuts,

9

and bruises. We conclude that this evidence is legally sufficient to support a conclusion that Appellant, by breaking free from the officers' grasp, fleeing, and continuing to struggle, caused both Officer Hernandez's and Officer Rinker's injuries.

### c. Whether there was legally sufficient evidence that Appellant caused the two officers' injuries with the requisite state of mind

In both charges, a defendant can be found guilty if the jury finds that the defendant acted intentionally, knowingly, or recklessly. TEX. PENAL CODE ANN. § 22.01(a)(1). A person acts intentionally when it is his conscious objective or desire to cause the result of his action. TEX. PENAL CODE ANN. § 6.03(a). A person acts knowingly when he is aware that his conduct is reasonably certain to cause the result. TEX. PENAL CODE ANN. § 6.03(b). A person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. TEX. PENAL CODE ANN. § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id*.

As Appellant points out, in result-of-conduct offenses such as assault and aggravated assault, it is not enough for the State to prove that the defendant engaged in conduct with the requisite state of mind, the State must also prove that the defendant caused the resulting injuries with the requisite state of mind. *Cook v. State*, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994). However, as we have said, "it has long been recognized that there will rarely be direct evidence of a defendant's intent, due to its elusive nature, and thus mental culpability must generally be inferred from the circumstances under which the prohibited act occurs." *Lewis v. State*, No. 08-15-00015-CR, 2017 WL 2303364, at *5 (Tex. App.—El Paso May 26, 2017, no pet.) (not designated for publication)

10

(citing *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991)). Accordingly, the jury is free to infer the defendant's intent to commit the offense from the defendant's conduct and surrounding circumstances. *Lewis v. State*, 715 S.W.2d 655, 657 (Tex. Crim. App. 1986).

Although Appellant argues that he merely attempted to flee from the officers so that he would not be handcuffed and arrested, the jury heard testimony that there was a significant physical struggle between the officers and Appellant. Specifically, the jury heard that Appellant forced his way back to his feet twice after being tackled, dragged Officer Rinker some distance, and even that he threw taser prongs back at Officer Rinker, causing Officer Rinker to lose control of his taser. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational juror could have at least inferred that Appellant acted recklessly, meaning he was aware but consciously disregarded a substantial and unjustifiable risk that the officers could sustain injuries—including serious bodily injuries—when he resisted arrest and continued to struggle. *See, e.g., Griffis v. State*, 441 S.W.3d 599, 604 (Tex. App.—San Antonio 2014, pet. ref'd) (evidence of appellant resisting arrest, including kicking and hitting the officer, and continuing to struggle, even after the officer had deployed a taser, was legally sufficient to establish that the appellant had acted intentionally, knowingly, or recklessly in causing injury to the officer); *Rollins*, 2016 WL 635218, at *4 ("Where a struggle occurs in which a police officer is injured, recklessness may be implied from the defendant's continued struggling."); *Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001) ("Even if appellant had intended only to prevent his arrest, the force used by appellant against [the officer], at the very least, recklessly caused [the officer] to suffer a bodily injury.").

Nothing in Appellant's brief appears to indicate that he challenges either of the remaining two elements of either charge—that he knew the two officers were public servants who were

11

lawfully discharging their official duties. However, we note that the jury heard evidence that the traffic stop was initiated after Officer Rinker turned on the overhead lights on his patrol car and activated his siren. The jury heard that the officers approached Appellant's vehicle and informed him of why he was being stopped. The jury would have been able to determine whether the officers were in uniform when they viewed the video footage of the beginning of the interaction. The jury heard testimony and saw that Appellant complied when the officers asked him to step out of the vehicle and when the officers instructed him to put his hands on the hood of the patrol car. We determine that this evidence was legally sufficient to permit the jury to conclude beyond a reasonable doubt that Appellant knew the two officers were public servants lawfully discharging their official duties. Having determined that there was legally sufficient evidence for a rational juror to find each element of both offenses beyond a reasonable doubt, we now address the Appellant's framing of his legal sufficiency issues.

### 3. The Law of Variance

In framing his issues, Appellant levies each of his legal sufficiency challenges against individual paragraphs included under Counts I and II. The indictment included two paragraphs under Count I (aggravated assault against a public servant), reproduced below:

> PARAGRAPH A
> did then and there intentionally, knowingly, or recklessly cause serious bodily injury to Victor Hernandez by biting Victor Hernandez's hand, and the defendant did then and there know that the said Victor Hernandez was then and there a public servant, to-wit: El Paso Police Officer, and that the said Victor Hernandez was then and there lawfully discharging an official duty,

> PARAGRAPH B
> did then and there intentionally, knowingly, or recklessly cause serious bodily injury to Victor Hernandez by causing Victor Hernandez's hand to strike the ground as a result of a physical confrontation, and the defendant did then and

12

there know that the said Victor Hernandez was then and there a public servant, to-wit: El Paso Police Officer, and that the said Victor Hernandez was then and there lawfully discharging an official duty,

AGAINST THE PEACE AND DIGNITY OF THE STATE.

As an example of Appellant's framing of his issues, in Issue One, Appellant argues that the evidence at trial was legally insufficient because, he alleges, there was no evidence that the bite referenced in Paragraph A of Count I caused Officer Hernandez to suffer serious bodily injury. Issues Two, Five, Six, and Seven are similarly directed at various paragraphs from the indictment. Appellant's framing of the four issues rests on his assertion that each paragraph represents a separate offense, such that Paragraph A of Count I (describing the bite) is one offense and Paragraph B (causing Officer Hernandez's hand to strike the ground) is another. We disagree that each paragraph written under Count I is a separate offense.

When the State wishes to charge multiple offenses in a single indictment, it is required by statute to set out each separate offense in a separate "count." TEX. CODE CRIM. PROC. ANN. art. 21.24(a); *Martinez v. State*, 225 S.W.3d 550, 554 (Tex. Crim. App. 2007). Under any "count," as was done here, the State may include one or more "paragraphs" alleging different manners of committing the same offense. Article 21.24(b); *Martinez*, 225 S.W.3d at 554. We determine that the offense charged under Count I was aggravated assault against a public servant, and that the manner in which the Appellant committed the offense is not an element of the offense itself. We agree with the State that any difference between the manner and means alleged in the indictment and what was proven at trial would, at most, represent an immaterial variance.

The Court of Criminal Appeals has identified two types of variances between what the State pleads in an indictment and what it presents evidence of at trial. *See Johnson v. State*, 364

13

S.W.3d 292, 294 (Tex. Crim. App. 2012). The first type of variance is one that involves the statutory language of the offense itself. *Id*. This is when the statute specifies alternate methods by which an offense may be committed. *Id*. The example of the first type of variance given in *Johnson* was a statute that makes it a crime to threaten a witness or an informant. *Id*. If the State pleaded that the defendant threatened a witness but obtained a conviction after showing at trial that the defendant threatened an informant, the failure to prove the charge as indicted would render the evidence legally insufficient to support the conviction because the statute specified the two methods of committing the offense. *Id*.

The second type of variance is one based on a non-statutory allegation that is descriptive of the offense in some way. *Id*. Some of these variances are impermissible, but others are not. *Id*. at 295. The Court in *Johnson* gave two examples. *Id*. at 294. The first example is where a charging instrument pleads "Mary" as the victim, but the State proves "John" as the victim at trial. *Id*. The *Johnson* Court explained that this would be an intolerable variation, because the murder of Mary is an entirely different crime from the murder of John. *Id*. Because each victim presents the State with an allowable "unit of prosecution" for the offense of murder, the State could obtain multiple murder convictions if it could prove the defendant murdered both Mary and John. *Id*. at 295-96. Therefore, alleging that the defendant murdered Mary, but then proving at trial that he murdered John would violate his rights to notice.

The second example of this type of variance provided by the *Johnson* Court is where a charging instrument pleads that an assault offense was committed with a knife, but at trial the State proves a baseball bat was used instead. *Id*. at 294. In this example, the *Johnson* Court held the variance would be immaterial because the elements of assault only require the State to prove that

14

the defendant caused an injury to the victim; there is no requirement that the State allege and prove that the offense was committed in a certain way (such as a with a knife). *Id*. at 296-98. This example was directly on point to the variance at issue in *Johnson*. *Id*. at 298. There, the defendant was charged with aggravated assault and the indictment described the acts of "hitting the victim with his hand" and "twisting the victim's arm with his hand." *Id*. Yet the evidence at trial showed that defendant committed aggravated assault by the act of throwing the victim against the wall. *Id*. The *Johnson* Court determined the acts charged in the indictment described how the crime may have been committed, but those acts did not describe the injury suffered by the victim, which is the statutory focus or gravamen of the result-of-conduct crime of aggravated assault. *Id*. The *Johnson* Court explained that, beginning with *Gollihar*, courts have made inquiry into the materiality of a variance where "a non-statutory allegation was descriptive of an element of the offense that defines or helps define the allowable unit of prosecution." *Id*. at 297 (citing *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001)). In *Johnson*, the Court held that the act that caused the injury did not define or help define the allowable unit of prosecution for the offense at issue, so the variance in the evidence proven at trial could not be material. *Id*.

Here, like in *Johnson*, the two paragraphs of Count I of the indictment do not describe two separate serious bodily injuries sustained by Officer Hernandez, they describe two possible acts that the State alleges might have caused Officer Hernandez's serious bodily injury. Therefore, we determine the two paragraphs under Count I are not separate aggravated assault offenses, each subject to its own legal sufficiency challenge(s). As stated above, a legal sufficiency challenge is measured by the statutory elements of an offense, not by any non-statutory description of how the offense may have been committed. *See Malik*, 953 S.W.2d at 240 ("[S]ufficiency of the evidence

15

should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case."). Therefore, we decline to measure legal sufficiency against immaterial descriptions of possible manners and means that the State alleged Appellant may have used to cause the officers' injuries. In sum, viewing the evidence in the light most favorable to the verdict, we conclude that a rational juror could have found the essential elements of both Count I and Count II beyond a reasonable doubt. Appellant's legal sufficiency challenges—Issues One, Two, Five, Six, and Seven—are overruled.

## B. Jury Charge Error

In Issues Three and Four, Appellant asserts that Texas law and his constitutional rights were violated when the trial court submitted a jury charge that he claims allowed the jury to render a non-unanimous verdict on Count I.

### 1. Standard of Review

Claims of jury-charge error are reviewed under a two-pronged test. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Under the *Almanza* test, first we determine whether an error in the charge exists. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find that an error exists, we then evaluate the level of harm caused by that error. *Id*. The degree of harm required for reversal depends on whether the error was preserved in the trial court. *Id*. Under *Almanza*, a jury charge error that was preserved by objection requires reversal when a reviewing court finds "some harm" to the defendant's rights. *Id*. However, when the error was not preserved by objection, we will not reverse unless the record shows "egregious harm" to the defendant. *Id*. at 743-44.

Egregious harm exists if the defendant has suffered actual—as opposed to merely

16

theoretical—harm from the jury-charge error. *Almanza*, 686 S.W.2d at 174. Egregious harm consists of error that affects the basis of the case and deprives the defendant of a valuable right or vitally affects a defensive theory. *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *See Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). An assessment of harm must consider the entire jury charge, the evidence, the arguments of counsel, and any other relevant information in the record. *Almanza*, 686 S.W.2d at 171.

### 2. Analysis

Under Texas law, a jury verdict must be unanimous in all criminal cases. *See* TEX. CODE CRIM. PROC. ANN. art. 36.29(a); *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). The unanimity must apply to "every constituent element of the charged offense . . . ." *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014). The Texas Court of Criminal Appeals has said that unanimity requires "that the jury agree upon a single and discrete incident that would constitute commission of the offense alleged." *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007).

As contemplated in the *Johnson* case cited above regarding variances, Appellant's third and fourth issues are based on his position that the two paragraphs under Count I in the indictment describe separate offenses. *See Johnson*, 364 S.W.3d at 296 ("any issue involving a non-statutory variance can be converted into a jury unanimity question"). Appellant argues that because the two paragraphs included under Count I of the indictment—and substantially reproduced in the jury charge—described two separate offenses (the bite and causing the officer's hand to strike the ground), it cannot be determined whether the jury unanimously agreed on which act of Appellant

17

constituted the offense charged.

We disagree that the jury charge in this case allowed for a non-unanimous verdict. Unanimity does not mean jurors must unanimously agree the defendant committed a result-of-conduct crime in one specific way or even with one specific act. *See Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008) (citing *Jefferson v. State*, 189 S.W.3d 305, 312 (Tex. Crim. App. 2006)). "In deciding what elements and facts a jury must unanimously agree on, courts implement the legislative intent behind the penal provision." *Id*. at 536. Texas and federal courts have both held that the jury must only be unanimous regarding the statutory elements of the crime as defined by the enacting legislature. *See Valdez v. State*, 218 S.W.3d 82, 84 (Tex. Crim. App. 2007); *Schad v. Arizona*, 501 U.S. 624, 633 (1991).

As stated above, the two paragraphs under Count I do not describe two separate offenses. Appellant was charged with one offense of aggravated assault against a public servant under Count I. Even though the two indictment paragraphs listed two separate manners and means by which Appellant might have committed the offense, aggravated assault is a result-of-conduct offense. Because the applicable criminal statute establishes the victim's injury itself as an element of the crime—not any specific method of conduct in causing the injury—neither Texas law nor the Fourteenth Amendment requires the jury to be unanimous about the manner and means by which the Appellant committed the offense. Here, the jury charge informed the jurors that they were required to come to a unanimous verdict for each offense. It also set forth the five elements—as identified above—of the offense of aggravated assault against a public servant. Because the jury was informed that it must come to a unanimous verdict on each of the five elements of the charge in Count I, and because the manners and means by which the Appellant may have caused a serious

18

bodily injury to a public servant is not a statutory element of the offense, we find no error in the charge and we overrule Appellant's third and fourth issues.

## C. Trial Court's Certification of Appellant's Right to Appeal

As a final matter, we address the absence of Appellant's signature on the Trial Court's Certification of Defendant's Right of Appeal. With his notice of appeal, Appellant included a copy of the trial court's certification. We note, however, the certification does not bear Appellant's actual signature indicating he was not only informed of his rights concerning an appeal but also any right to file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. See TEX. R. APP. P. 25.2(d). Instead, the certification shows Appellant's counsel, Brian Rodriguez with the El Paso County Public Defender's Office, stated in a typed line that he had signed for Appellant. We hold the certification is defective in its present form and has yet to be corrected by Appellant's attorney. We further note that Appellant filed a Motion to Substitute the appointed public defenders with James D. Lucas on February 6, 2020. James Lucas then filed Appellant's brief.

To remedy this defect, this Court ORDERS Appellant's attorney, James Lucas—pursuant to TEX. R. APP. P. 48.4—to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of his right to file a pro se petition for discretionary review, and to inform Appellant of the deadlines applicable to his case. *See* TEX. R. APP. P. 48.4, 68; *see also Ex parte Wilson*, 956 S.W.2d 25, 26-27 (Tex. Crim. App. 1997) (holding that an appellate attorney has a duty to inform a defendant of "the fact that his conviction has been affirmed" and that "[the defendant] can pursue discretionary review on his own."). Communicating this information will protect Appellant's right to file a petition for discretionary review with the Court of Criminal Appeals, even

though he does not have a constitutional right to appointed counsel in preparing such a petition.

*Id.* at 27. Appellant's attorney is further ORDERED to comply with all of the requirements of TEX. R. APP. P. 48.4.

## IV.  CONCLUSION

The trial court's judgment on the jury's verdict is affirmed.


GINA M. PALAFOX, Justice

June 21, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)

20